90 N.J. Super. 22 (1966)
216 A.2d 18
FRANCES ROTHMAN AND EDWARD ROTHMAN, PLAINTIFFS-RESPONDENTS,
v.
JOSEPH SILBER, STANLEY GOODMAN AND NEWARK BETH ISRAEL HOSPITAL, A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1965.
Decided January 3, 1966.
*24 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Melvin B. Cohen argued the cause for appellant Joseph Silber (Messrs. Kristeller, Zucker, Lowenstein & Cohen, attorneys).
Mr. Samuel H. Davis argued the cause for appellant Stanley Goodman (Messrs. Davis & Roth, attorneys).
*25 Mr. Fred W. Jung, Jr. argued the cause for appellant Newark Beth Israel Hospital (Jung, Selikoff & Rathman, attorneys).
Mr. Samuel March argued the cause for respondents.
The opinion of the court was delivered by LABRECQUE, J.A.D.
By leave granted, defendants Joseph Silber, Stanley Goodman and Newark Beth Israel Hospital appeal from the denial of their motion to dismiss plaintiffs' amended complaint for medical malpractice on the ground that it was barred by the statute of limitations, N.J.S. 2A:14-2. Plaintiffs cross-appeal from the dismissal of the ninth and tenth counts of their amended complaint. See Rothman v. Silber, 83 N.J. Super. 192 (Law Div. 1962).
On March 10, 1960 plaintiff Frances Rothman was delivered of her third child at the Newark Beth Israel Hospital. She was attended by Dr. Goodman as her obstetrician and Dr. Silber as anesthetist. On August 29, 1962, more than two years later, she and her husband (per quod) instituted the present suit alleging negligence in the administration of a "saddle block [spinal] anesthesia" and claiming damage for pain, suffering and disability. Defendants answered denying negligence and setting up as a special defense the statute of limitations.
Defendants Goodman and Silber moved to dismiss the complaint on the ground that the action was barred by the two-year statute. R.R. 4:12-2(e). This motion was denied without prejudice pending amendment of the complaint to set up fraudulent concealment by defendants of Mrs. Rothman's condition and its cause. Thereafter, a motion by all three defendants to dismiss the amended complaint for the same reason was denied on the ground that the administration of the anesthesia amounted to the introduction of a foreign substance into her body, and that the two-year period of limitation did not begin to run until she discovered it to be the cause of her injury. However, the judge of the Law Division *26 granted summary judgment for defendants on the ninth and tenth counts of the amended complaint, which charged fraudulent concealment, on the ground that there was an absence of any factual basis for that charge.
The record on appeal consists, for the most part, of affidavits filed by Mrs. Rothman and excerpts from her deposition, excerpts from the depositions of three of her treating physicians, Dr. Arthur S. Buckler, Dr. Lewis H. Loeser and Dr. Philip Willner, together with supporting exhibits, and the depositions of Dr. Silber and Dr. Goodman.
Defendants' basic contention is that plaintiffs' cause of action for malpractice in the administration of the anesthesia accrued at the time of its administration and was barred at the expiration of two years thereafter. N.J.S. 2A:14-2; Tortorello v. Reinfeld, 6 N.J. 58 (1950). Plaintiffs argue that it is within the class of cases governed by Fernandi v. Strully, 35 N.J. 434 (1961).
From the affidavits and deposition of plaintiff wife it appears that after the birth of her child and prior to her discharge from the hospital she was in extreme pain and her right side became stiff. She was told by defendants Goodman and Silber that these were after-effects of childbirth and would gradually disappear. For four months thereafter her right side would become stiff and hurt at the end of the day. On July 15, 1960 she consulted Dr. Emanuel Klosk for the condition. Two weeks later he advised her that in his opinion a vertebra was out of place as a result of the childbirth. He suggested hospitalization. She then consulted Dr. Philip Willner, an orthopedist, who advised her that the difficulty did not involve the vertebrae and suggested that she consult a neurosurgeon for possible nerve injury. On August 15, 1960 she consulted Dr. Lewis H. Loeser, a neurosurgeon, who prescribed medication for a "nerve infection." After about a month of his medication she felt "almost completely better." However, about November 18, 1960 the pain reappeared. She was then examined by Dr. Arthur S. Buckler, who prescribed medication for a nerve infection and, she said, advised her *27 that her trouble had been brought about by the administration of the saddle block anesthesia. She asserts that this was the first knowledge that she had of the cause of her difficulty. Specifically, she deposed:
"He further advised that no further spinal anesthetic could be employed on me as my nerve had been severely injured. He further indicated that my entire condition was attributable to a foreign object being placed into my body improperly."
While her affidavit does not point out in what respect the anesthetic was negligently administered, at the oral argument counsel for plaintiffs revealed that it would be their contention at the trial that the anesthetic "was placed in the wrong place."
Dr. Willner's notes on his first examination of Mrs. Rothman were to the effect that:
"The patient presents the cardinal findings of a peripheral neuritis secondary to a saddle block, to the right sciatic nerve; to the peraformis muscle, without any motor, sensory or reflex changes, have advised 1,000 m.g. B-12 three times a week, plus Darvon comp. one BID plus conservative measures."
On August 9, 1960, the date of her next and final visit, he made a note that:
"This patient has a nerve root irritation secondary to a pudendal block. I feel that she should be seen by a neurologist, being referred to same."
Dr. Willner stated, however, that he made no diagnosis, was not qualified to make a neurological diagnosis, and his notes were no more than his conclusions from the history given him by the patient. X-rays taken by him at the time were negative for bone pathology.
Dr. Loeser, the neurologist, deposed that he saw the patient on August 15, 1960 and, while his examination revealed no objective finding, she told him as part of the history that "there is an injury to the nerve caused by the saddle block." *28 He came to no definite conclusion but, based upon the history given, entertained a "suspicion that she might have had a neuritis from a spinal block * * *." He prescribed a drug for palliative relief and never saw her again.
Dr. Buckler, a general practitioner, treated plaintiff for her fourth pregnancy. He testified that during the course of his treatment she complained of a sciatic type pain in the right leg and indicated it was the result of a saddle block anesthesia at her third pregnancy. In his delivery of plaintiff's fourth child he employed a pudendal block as opposed to the low back approach of a saddle block. He continued to treat plaintiff after the birth of the child but stated that he had never told her that the sciatic type pain in her right leg which she complained of had come about as a result of a saddle block at the time of her third pregnancy.
We hold that plaintiff's cause of action accrued at the time of the administration of the anesthesia and that, absent extenuating circumstances such as will be discussed infra, her cause of action and that of her husband were barred by their failure to institute the suit within the period provided by N.J.S. 2A:14-2.
At common law there was no fixed time for the bringing of an action. Uscienski v. National Sugar Refining Co., 19 N.J. Misc. 240, 242, 18 A.2d 611 (C.P. 1941). Such limitations are creatures of statute and derive their authority therefrom. They embody important policy considerations, one of which is the giving of repose to human affairs. Wood v. Carpenter, 101 U.S. 135, 139, 25 L.Ed. 807, 808 (1879); Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 108 (1965). Where "a plaintiff knows or has reason to know that he has a cause of action and voluntarily sleeps on his rights," permitting the statutory period to expire, "the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action." Fernandi v. Strully, supra, 35 N.J., at p. 438.
In Fernandi, on which plaintiffs rely heavily, Mrs. Fernandi sued for malpractice on the part of a surgeon who permitted *29 a wing nut, part of a surgical instrument, to remain in her body following surgery. She was not aware of this addition to her anatomy until three years after the operation when, upon the taking of X-rays in an effort to account for her continued distress, its presence was discovered. The absence of the wing nut from the surgical instrument of which it was a part had been discovered at the hospital shortly following the operation, but of this plaintiff was given no notice.
Following the filing of Mrs. Fernandi's complaint a motion for summary judgment was made and granted on the ground that the statute of limitations barred the suit. The Supreme Court reversed, holding that the wing nut was a foreign object which had been permitted to remain in plaintiff's body and that the period of limitation began to run when the patient knew or had reason to know of its presence. Fernandi v. Strully, supra, 35 N.J., at pp. 449 et seq.
Plaintiffs contend that the negligent administration of the anesthetic should be equated with the leaving of a wing nut or similar foreign object in the body, and thus their right of action did not accrue until November 18, 1960 when, according to Mrs. Rothman, Dr. Buckler told her that this was the cause of her trouble. We disagree. Assuming, arguendo, that a jury could find that she did not know the cause of her pain until November 18, 1960 (it is denied by Dr. Buckler and is at variance with the testimony of both Dr. Willner and Dr. Loeser), the time of accrual of her cause of action does not come within the ambit of the rationale expressed in Fernandi v. Strully.
In Fernandi the court held:
"The sweep of Justice Rutledge's language [in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282] raises questions as to earlier decisions which took the position that statutory periods of limitation are generally deemed to run though the plaintiff does not know or have any reason to know that he has a cause of action; but this broader subject with its far-reaching implications need not be pursued here for the foreign object malpractice cases, with which we are particularly concerned, present special considerations which may fairly be said to set them apart. They involve the confidential doctor-patient *30 relationship, the negligent failure to remove a foreign object during the course of the doctor's operation on his patient, the patient's total ignorance during the customary period of limitations of that fact or of circumstances suggesting it, the later discovery of the foreign object and the material harm it had done and the patient's expeditious institution of legal action thereafter. These circumstances eliminate the danger of a belated false or frivolous claim. * * *" (at pp. 441-442, emphasis added)
And further:
"* * * we are satisfied that the case at hand falls within a special grouping or `class of cases' (1 Wood, supra, at pp. 685, 686) where the period of limitations may and should fairly and justly be said to begin to run when the plaintiff knows or has any reason to know about the foreign object and the existence of the cause of action based upon its presence; to the extent that Weinstein v. Blanchard, supra, 109 N.J.L. 332, embodies a contrary view, it is hereby disapproved." (at p. 450)
And further:
"It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors. Here the lapse of time does not entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim. The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit." (at pp. 450-451, emphasis added)
From the foregoing, it appears clear that Fernandi does not extend to the situation before us. While a drug used as an anesthetic may qualify as a foreign substance under a dictionary definition of that term, it appears clear that the considerations which led the Supreme Court to carve out an exception to the general rule in the case of the wing nut involved in Fernandi were never intended to apply to such a drug. The wing nut was not intended to be incorporated into the patient's body but came to be there by inadvertence. Here *31 the drug was deliberately injected and was intended to remain in the body. A wing nut, though immured within a patient's body and undiscovered for a long period of time, see Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (Sup. Ct. 1959), retains its identity so that a defendant's ability to defend a stale claim is not unduly impaired. A drug, contrariwise, loses its identity quickly after injection or ingestion. While the presence of wing nuts, sponges, clamps, tubes and similar operating paraphernalia may, itself, be probative of negligence, see Annotation, "Liability of surgeon leaving sponge or other foreign matter in incision," 65 A.L.R. 1023 (1930); Stawicki v. Kelley, 113 N.J.L. 551 (Sup. Ct. 1934), affirmed o.b. 115 N.J.L. 190 (E. & A. 1935), recovery for the negligent introduction of a drug must be predicated upon lack of care or skill in the selection or administration of the drug, requiring expert testimony. See Ayers v. Parry, 192 F.2d 181 (3 Cir. 1951); Annotation, "Malpractice: duty and liability of anesthetist," 53 A.L.R.2d 142 (1957). The question of liability in such cases becomes dependent upon plaintiff's credibility and upon expert testimony upon matters of professional diagnosis, judgment or discretion, factors upon the absence of which the Supreme Court placed significant reliance in Fernandi (35 N.J., at p. 450).
Further, it cannot be said here, as in Fernandi, that the lapse of time does not entail danger of a false or frivolous claim or of a speculative or uncertain one. Nor may it be concluded that the circumstances do not permit the suggestion that plaintiffs here have knowingly slept on their rights. On the contrary, they admittedly possessed the knowledge upon which they base their present claim by November 18, 1960 (by August 9, if Dr. Willner is to be believed) but deferred the institution of the present action until August 29, 1962.
Plaintiffs point out that our sister state of California has extended its rule which suspends the statute in cases involving a foreign substance in the body, Huysman v. Kirsch, 6 Cal.2d 302, 57 P.2d 908 (1936), to cases of negligent treatment, *32 Greninger v. Fischer, 81 Cal. App.2d 549, 184 P.2d 694 (D. Ct. App. 1947), and negligent diagnosis, Costa v. Regents of University of California, 247 P.2d 21 (Cal. D. Ct. App. 1952), reversed on other grounds 116 Cal. App.2d 445, 254 P.2d 85 (D. Ct. App. 1953). See Annotation, "When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner," 80 A.L.R.2d 368, 390-395 (1961). The rationale expressed in Fernandi does not point to such an extension. Our court there held that affording the plaintiff her day in court in that "highly confined type of case" could be accomplished without undue impairment of the two-year limitation or the conditions of repose which underlie it. We cannot say that such would be the result here, should plaintiff's contention be upheld.
We turn next to consideration of plaintiffs' contention that defendants' fraudulent concealment precluded application of the bar of the statute of limitations, and that it was error for the trial judge to dismiss the ninth and tenth counts of the amended complaint referable thereto. They urge that (1) whether there was a concealment amounting to legal or equitable fraud was a question which should have been left for determination by the trier of the facts, and (2) since there was no specific motion to dismiss the ninth and tenth counts of the amended complaint, plaintiffs were not afforded adequate notice or an opportunity to present answering affidavits in support of their contention of fraud.
Defendants' notice of motion to dismiss the amended complaint, presumably made under R.R. 4:12-2(e) (failure to state a claim upon which relief can be granted), was based solely upon the bar of the statute of limitations. However, R.R. 4:12-2 expressly provides that on a motion asserting a defense under subparagraph (e), if matters outside the record are presented and received by the court, the motion is to be treated as one for summary judgment as provided in R.R. 4:58-2. The judge of the Law Division appears to have treated it as such in arriving at his conclusion that defendants *33 were entitled to summary judgment as to the ninth and tenth counts.
Proceedings for summary judgment under R.R. 4:58 are designed to provide a prompt businesslike and inexpensive means of disposing of a cause. While they are not to be used as a vehicle for the trial of disputed facts upon affidavit, Bouley v. Borough of Bradley Beach, 42 N.J. Super. 159 (App. Div. 1956), where on such motion it appears that there is no genuine issue of material fact presented, it is for the court to determine the motion on the applicable law. New Jersey Mtge. and Inv. Corp. v. Calvetti, 68 N.J. Super. 18 (App. Div. 1961). In passing upon such a motion, all papers supporting it are to be carefully scrutinized and those opposing indulgently treated to the end that all doubts are to be resolved in favor of the opponent of the motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). We turn, therefore, to consideration of the papers which were before the court on defendants' motion, in the light of the law applicable.
Plaintiffs argue, and rightly so, that where a surgeon has been guilty of fraudulent concealment of the result of his asserted malpractice, the statute of limitations is tolled until the patient discovers or is charged with knowledge of the alleged concealment. Bauer v. Bowen, 63 N.J. Super. 225, 232 (App. Div. 1960). See also Tortorello v. Reinfeld, supra, 6 N.J., at p. 67. In such case, whether there has been a concealment or whether the facts are such as to work a fraud upon the patient are questions of fact ordinarily reserved to the jury.
We perceive no merit to plaintiffs' contention that they were precluded from meeting the issue of the fraudulent concealment of Mrs. Rothman's condition. As noted, the original motion which invoked the bar of the statute of limitations, returnable on March 15, 1962, was denied without prejudice to its renewal. The same order permitted plaintiffs to file an amended complaint setting up the fraudulent concealment of Mrs. Rothman's alleged condition, proof of which would have *34 constituted a ground for tolling the statute. This followed the filing of an affidavit by Mrs. Rothman in which she deposed that she first became aware of her condition and the cause of it on November 18, 1960. While the amended complaint recites that defendants "practiced fraud" upon Mrs. Rothman and were guilty of "fraudulent concealment" of her "injury," it does not set forth the particulars of the fraud alleged, as required by R.R. 4:9-1.
Thereafter, beginning April 26, 1963, depositions were taken of defendants Dr. Silber and Dr. Goodman, Lester M. Bornstein, Sarah Jones and Catherine Scheller, hospital employees, and plaintiffs' physicians, Doctors Buckler, Loeser, Willner and Emanuel Klosk. Upon the completion of discovery the motion to strike the complaint was renewed. Annexed to the notice of motion, and referred to therein, was a brief directed, in part, to plaintiffs' claim of fraudulent concealment, based upon the depositions which had been taken. Plaintiffs were thus on notice that the issue on the motion was the applicability of the bar of the statute of limitations, and that this, in turn, depended upon whether (1) Fernandi v. Strully applied, or (2) there was substance to their claim of fraudulent concealment. This is confirmed by their counsel's answering brief. Mrs. Rothman's answering affidavit on the second motion was a duplication of that on the first motion and made no reference to the alleged fraudulent concealment. Moreover, the court had before it her deposition, in which she testified at length as to her conversations with the defendant physicians. The matter was ripe for decision on the motion.
Plaintiffs next contend that, if it be found that the issue of fraudulent concealment was properly before the court on the motion for summary judgment, the proofs before the court were sufficient to call for denial of the motion.
Since the appendices furnished us contained only excerpts from the deposition of certain of the witnesses referred to above, we requested and were furnished with the entire deposition of each of these witnesses. It would be manifestly unfair to pass upon the trial judge's determination without giving *35 plaintiffs the benefit of all of the evidence which was before him.
We are satisfied from our examination of plaintiff's affidavit and the depositions referred to, that the trial judge properly determined that there was no evidence from which it could be inferred that any of the defendants had fraudulently concealed plaintiff's purported injury from her and that, therefore, there was no genuine issue of material fact as to that contention.
Concealment presupposes knowledge of a fact and concealment of it from one not in possession of such knowledge, e.g., in Bauer v. Bowen defendant, who had performed a therapeutic abortion on plaintiff, had falsely represented that he had removed the entire foetus. Generally, fraudulent concealment depends upon the presence of some trick or contrivance intended to exclude suspicion and prevent inquiry. Wood v. Carpenter, supra, 101 U.S., at p. 143, 25 L.Ed., at p. 807; 34 Am. Jur., Limitation of Actions, § 234, p. 191 (1941); cf. Hawkins v. Public Service, &c., Transport, 137 N.J. Eq. 183 (Ch. 1945); Annotation, 144 A.L.R. 209, 220 et seq. Even assuming that fraud was adequately pleaded here, R.R. 4:9-1, the record before us fails to disclose any testimony which, if believed, could lead reasonable men to conclude that defendants fraudulently concealed from Mrs. Rothman knowledge of any condition resulting from any alleged malpractice in connection with her treatment. There is nothing to indicate that the anesthetic (Pontocaine) was defective or was improper for the purpose used; that its use on plaintiff was contra-indicated, or that there was any want of skill in its administration. Assuming that such evidence existed, there was no indication that any factual representation was made by any of the defendants as to the anesthesia used or its administration  or any reliance by plaintiffs upon any such representation.
Plaintiffs rely upon Mrs. Rothman's testimony to the effect that after the birth of her child she complained to defendant physicians that she was suffering from headaches and *36 pain running down her right side, and that their reply was that these were after-effects of childbirth and would pass away. Such statements amounted to no more than a medical opinion and, in the absence of additional facts not present in the record, they could not rise to the status of a fraudulent concealment. Even if made, they could not have been binding upon defendant hospital.
Plaintiffs also argue that the absence of an "anesthesia sheet" from the hospital record justifies an inference of fraudulent concealment. We are unable to agree. Assuming that such a record had been prepared (which does not appear), the hospital alone would have been responsible for its custody. Aside from this, Dr. Silber made a record of the anesthesia used and the condition of the patient following delivery in another portion of the hospital record ("Labor Record"). To have permitted the issue of fraudulent concealment to go to the jury on this tenuous foundation would have been to open the door to speculation and surmise. Further, we seek in vain for evidence of any relation between the alleged missing record and plaintiffs' failure to start suit within the statutory period. It is conceded that they knew of Mrs. Rothman's asserted condition and its cause at least 16 months before the statute expired. Tortorello v. Reinfeld, supra, 6 N.J., at p. 67.
We perceive no merit to the remaining points raised.
Affirmed as to the entry of summary judgment on the ninth and tenth counts of the amended complaint and, as to the remaining counts, reversed and remanded for the entry of judgment in favor of defendants in accordance with this opinion.
GAULKIN, S.J.A.D. (concurring).
I am in complete agreement with my Brothers. However, I would add that, even if this were a true foreign body case, plaintiffs still should be held barred by the statute of limitations.
The anaesthetic was administered on March 10, 1960. Mrs. Rothman claims she first learned of the alleged malpractice on November 18, 1960  16 months before the statutory period *37 expired. During that time nothing prevented her from suing, or justified delay; defendants did not treat her, influence her or otherwise deter her from action. It seems to me that Fernandi does not apply under such circumstances.
I do not think that Fernandi stands for the proposition that a patient may always delay action until two years after learning the facts. For example, I do not think Fernandi would permit a patient who learned all the facts five years after an operation to wait two years more before starting suit. In spite of the numerous references to the time of the accrual of the cause of action in Fernandi, I think the Supreme Court made it plain that it was not laying down an ironclad mechanical rule, but one depending upon the justice of the particular case. The court frankly admitted that the statute itself made no exceptions and that our courts have created them, but they pointed out that the courts "have conscientiously sought to apply [the statute] with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices." (at p. 449) As examples, the court cited cases showing that "in many * * * instances they have invoked equitable powers to preclude unjust assertions of the bar of limitations." (at p. 450) After giving many other illustrations of the means used to make exceptions in individual cases and under special circumstances, the court said that Fernandi presented such "special considerations." One of them, the court said, was "the patient's expeditious institution of legal action" after learning the facts. (at p. 442) The court concluded that "the circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit." (at p. 451, emphasis added)
True, in Fernandi, the court was dealing with an action instituted more than two years after the operation. However, if the patient must proceed with reasonable diligence after knowledge after the statutory period has run, why not before? *38 Here Mrs. Rothman had left 16 months of the statutory two years. It seems to me that under these circumstances justice does not require that an exception be made for her. On the contrary justice would seem to require that here the policy of the statute be upheld.