EMANUEL SCHIFFMAN, Appellant, *v.* HOSPITAL FOR JOINT DISEASES, Respondent, et al., Defendants.

Second Department, February 22, 1971.

*Seymour L. Colin* for appellant.

*Bower, O'Connor & Gardner* (*Benjamin H. Siff* of counsel), for respondent.

HOPKINS, J. The plaintiff appeals from the dismissal of his complaint in a malpractice action. The Special Term concluded that the action was barred by the Statute of Limitations (CPLR 214, subd. 6). We agree.

We take the allegations of the complaint to be true (*Cohn* v. *Lionel Corp.*, 21 N Y 2d 559). The plaintiff asserts that the defendants Casten, Jaffe, Selin and Friedman (not parties to this appeal) are physicians who were either members of the staff or employees of the defendant hospital. In 1959, the complaint alleges, the plaintiff consulted Casten, who advised

him to enter the defendant hospital for surgery. During the course of the operation performed by Casten, a specimen of the plaintiff's tissue was examined by Jaffe and Selin for the department of pathology within the defendant hospital. Jaffe and Selin reported that the tissue indicated malignancy in the form of lymphosarcoma; and Casten so informed the plaintiff. The slides of the biopsy upon which the report of malignancy was made were reviewed in 1967; and it is alleged that no malignancy was actually revealed in the slides. On September 21, 1967 the plaintiff was told that no malignancy had existed; he claims he did not know that fact prior to that date and that he could not have reasonably discovered it before. By reason of the negligence of the defendants, the plaintiff alleges that he suffered the administration of unnecessary radiation therapy, causing him personal injury, for which he seeks damages.

This action was commenced on June 10, 1969 and the defendant hospital moved to dismiss the complaint, without serving an answer, on the ground that the action was untimely brought (CPLR 3211, subd. [a], par. 5). An action to recover damages for malpractice must be instituted within three years from the time the cause of action accrued (CPLR 203, subd. [a]; 214, subd. 6). Hence, the point for determination is whether the plaintiff's cause of action accrued in 1959, the time of the misreading of the biopsy slides, or in 1967, the time of the discovery of the error and the plaintiff's first knowledge of it.

The plaintiff's argument that the action accrued in 1967 hangs on *Flanagan* v. *Mount Eden Gen. Hosp.* (24 N Y 2d 427). That case, he says, recognized the inherent difficulty faced by a patient who is a victim of malpractice to know that he has been negligently treated, and that, where the proof of the malpractice is clear and retains its identity, the patient's action for damages accrues when the malpractice is discovered or could have been reasonably discovered in the exercise of diligence.

*Flanagan* modified the rule in New York which had measured the Statute of Limitations in malpractice actions from the time the negligence occurred (cf. *Conklin* v. *Draper,* 229 App. Div. 227, affd. 254 N. Y. 620) to prescribe that in cases in which foreign objects had been left in the site of an operation the statute should be considered to run from the time of discovery of the foreign object by the patient. The plaintiff's dependence on *Flanagan* necessarily implies that the rule measuring the statute from the date of the event of the negligence has been abandoned in all cases of malpractice, regardless of its character.

We do not think *Flanagan* can be read so broadly. Indeed, the majority opinion carefully limited the issue which was presented: "when should the Statute of Limitations begin to run in a foreign object medical malpractice case?" (*Flanagan v. Mount Eden Gen. Hosp., supra,* p. 429). Moreover, in speaking of the plaintiff's claim that surgical clamps used in an operation were not removed from her body, Judge KEATING said that it did not "rest on professional diagnostic judgment or discretion", but "solely on the presence of a foreign object within her abdomen" (p. 431). Finally, the modification of the general rule was clearly phrased to apply to an action based on the negligent failure to remove a foreign object (p. 431).

In the appeal before us, the plaintiff's action does not concern a foreign object, but rather a misreading of the biopsy slides to arrive at a mistaken diagnosis of malignancy. The claim of negligence relates to a misdiagnosis of ailment, an area of the physician-patient relationship not touched by the *Flanagan* holding. We do not think we should further contract the general rule applicable to diagnostic negligence by marking the beginning of the time permitted for the commencement of an action for malpractice by the date of the patient's discovery of the physician's negligence.

We reach this determination apart from our role as an intermediate appellate court which must take its guidelines from the court of last resort. It is extremely doubtful whether that role would allow us to depart further from the traditional view of the Statute of Limitations than *Flanagan* sanctions; a question of public policy in the interpretation of the statute and the balance between the Legislature and the courts in changing a rule of law is plainly raised, which the close division in the votes of the members of the court in *Flanagan* demonstrates.

Beyond this consideration, we are of the opinion that the preference for repose which the Statute of Limitations reflects outweighs in this case the disadvantage to the plaintiff which results from the application of the general rule. The plaintiff's discovery of the malpractice occurred some eight years after the mistaken diagnosis; and then he did not begin his action until some 10 years had passed after the diagnosis. The defendants' memories of the circumstances must perforce be appreciably impaired by the lapse of time; and the defendants may be put in the position of resisting claims arising out of new technology or advances in medical knowledge which have taken place since the time of the treatment.[1]

1. The defendants would of course be judged by the state of the medical art at the time of treatment, but this would not prevent the necessity of a defense to the belated action.

The existence of the biopsy slides themselves as evidence of the malpractice cannot be equated with the presence of a foreign object after an operation. No interpretation is required to determine that the foreign object under no conditions should be left in a patient's body; on the contrary, the biopsy slides, like X-ray plates or even hospital and doctors' records which survive the treatment of a patient, and are retained for the purpose of possible future treatment, must be interpreted by experts whose testimony would have to form the substance of the action by the patient against his physicians and hospital.

In addition, it is not contended by the plaintiff that the biopsy slides were not accessible to him from the time of the surgery. The foreign object may not make its presence known until the patient suffers discomfort and discovery follows. The *Flanagan* holding accepted the basic unfairness to the patient of imputing to him the knowledge which he could not have possessed because of the concealment of the object within his body. That unfairness does not exist in the present appeal, where the biopsy slides have been known to exist throughout.[2]

The plaintiff argues that we extended the holding of *Flanagan* in *Murphy* v. *St. Charles Hosp.* (35 A D 2d 64) and that the present appeal is controlled by the considerations implicit in *Murphy*. In *Murphy* we decided that the Statute of Limitations did not run against an action for malpractice brought in 1968 for the breaking in 1967 of a prosthesis placed in the plaintiff's body in 1963. The opinion by Mr. Justice (now Presiding Justice) RABIN determined that the insertion of the prosthesis was akin to a foreign object, because both involved a medical device which was preserved as evidence of the malpractice alleged and could not be subject to false claims. Moreover, the opinion found that in any event the cause of action could not have accrued earlier than 1967, when the prosthesis broke and the injury to the plaintiff was sustained. We think that *Murphy* is not similar to the plaintiff's action on either ground of the opinion.

Finally, we must remark that the ignorance of a party that a cause of action exists in his favor does not in itself lengthen the Statute of Limitations when the facts are available to him (*509 Sixth Ave. Corp.* v. *New York City Tr. Auth.*, 15 N Y 2d 48, 51; *Schmidt* v. *Merchants Desp. Transp. Co.*, 270 N. Y. 287, 300; *Varga* v. *Credit Suisse*, 5 A D 2d 289, affd. 5 N Y 2d 865; *Libby* v. *Van Derzee*, 80 App. Div. 494, affd. 176 N. Y. 591).

---

2. It should be noted that the plaintiff disclaims any reliance on the continuous treatment theory (cf. *Borgia* v. *City of New York*, 12 N Y 2d 151) to overcome the bar of the Statute of Limitations.

The statute, rather, presumes that the lapse of time indicates the party's disinclination to enforce the cause. In the present appeal, this aspect of the statute takes on emphasis since the fair intendment of the complaint is that the defendants were equally ignorant of the negligence charged. At least, no allegation of knowing concealment of the slides is directed toward the defendants by the plaintiff.

In affirming the dismissal of the complaint by the Special Term, we are aware that the California courts have reached a conclusion favorable to the plaintiff's arguments (*Thompson* v. *County of Fresno*, 59 Cal. 2d 686; *Custodio* v. *Bauer*, 251 Cal. App. 2d 303; *Calvin* v. *Thayer*, 150 Cal. App. 2d 610). We are aware, too, that commentators have expressed the belief that the cause of action for all cases of malpractice should begin to run from the time when the patient actually discovered, or with due diligence should have discovered, the negligent act (note, 29 U. Pitt. L. Rev. 341; comment, 21 Rutgers L. Rev. 778). For the reasons stated, we cannot agree.

The order of the Special Term dismissing the complaint should be affirmed, with $10 costs and disbursements.

RABIN, P. J., MUNDER, MARTUSCELLO and LATHAM, JJ., concur.

Order of the Supreme Court, Kings County, dated March 25, 1970, affirmed, with $10 costs and disbursements.

