CARMEL MORAN, *ET AL.*, PLAINTIFFS-RESPONDENTS, v.
LOUIS NAPOLITANO AND THOMAS BELLAVIA, DE-
FENDANTS-APPELLANTS.

Argued February 23, 1976—Decided July 9, 1976.

*Mr. James W. Taylor* argued the cause for defendants-appellants (*Mr. Joseph Mezzacca, Jr.* on the brief).

*Mr. Charles Rodgers* argued the cause for plaintiffs-respondents (*Messrs. Breslin & Breslin,* attorneys).

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. This is another medical malpractice case involving the proper application of the "discovery" rule to the defense of statute of limitations. See *Lopez v. Swyer,* 62 *N. J.* 267 (1973); *Fox v. Passaic General Hospital,* 71 *N. J.* 122 (1976), argued and decided simultaneously herewith, affirming 135 *N. J. Super.* 108 (App. Div. 1975).

Of the two basic issues presented on this appeal, our opinion in *Fox, supra,* is determinative of one. We there held that notwithstanding that plaintiff discovers his cause of action for malpractice prior to the expiration of two years from the date of the actionable conduct he nevertheless will ordinarily be allowed two full years from the date of such discovery to bring his action. 71 *N. J.* p. 126. This right was declared circumscribed only to the extent that delay in instituting the action beyond the initial two-year period after the actionable event could be found to have "peculiarly or unusually prejudiced the defendant" *and* the plaintiff had had a reasonable time left to bring the action between the time of discovery and the expiration of the said initial two-year period. Pp. 126–127.

The other broad issue presented here is whether the discovery rule is to be extended from cases involving foreign

objects left in the body and similar situations, exemplified by the progenitor case in this field, *Fernandi v. Strully*, 35 *N. J.* 434 (1961), to the entire range of medical malpractice, including improper treatment and diagnosis.

There is no dispute as to the operative facts in this case. For some years plaintiff Carmel Moran was treated by the defendant physicians for a chronic ulcerative colitis condition. Dr. Napolitano last treated Mrs. Moran on September 21, 1971 and Dr. Bellavia on October 8, 1971. More than three years later, on January 9, 1974, plaintiffs filed the present action, charging both doctors with improper and negligent examination, diagnosis and treatment.

The pertinent intervening facts are these: on October 13, 1971 Mrs. Moran came under the care of Dr. Peter Douvres who diagnosed her condition as severe chronic fulminating ulcerative colitis. He considered her condition so degenerated as to require prompt hospitalization, and soon thereafter he performed surgery to remove a considerable part of the large intestine. On March 16, 1972 plaintiff Michael Moran consulted counsel to discuss whether, in view of the drastic surgery performed by Dr. Douvres, the care previously provided by defendants constituted malpractice. Counsel in turn corresponded with Dr. Douvres for his opinion. On June 14, 1972 Dr. Douvres replied that, while he could not determine whether defendants were guilty of malpractice, it was his opinion that "the patient did not receive proper attention." Counsel considered this opinion equivocal and sought further expert medical advice. In December 1972 he obtained an opinion from another physician which positively assessed defendants' treatment as malpractice.

On January 9, 1973 plaintiffs' attorney wrote to defendants, told them that his medical expert informed him that they were guilty of malpractice, and suggested they refer the claim to their insurance carrier. After some correspondence between the attorney and the carrier suit was filed, as noted above, on January 9, 1974. Thereafter defendants filed

a motion for summary judgment based on the defense of the statute of limitations. The motion was denied.

Defendants then obtained leave to file an interlocutory appeal. In an unreported *per curiam* opinion, with one judge dissenting, the Appellate Division affirmed the judgment. Viewing the facts most favorably to plaintiffs, the court concluded that since plaintiffs first discovered their cause of action in June 1972, and suit was started within two years from that date, summary judgment was properly denied. Whether, as defendants argued, equitable considerations operated to preclude application of the discovery rule, was an issue which, in the court's view, "should await determination at a plenary trial and not be disposed of by way of summary judgment." The court further declared, however, that if the discovery rule did apply to the case at bar "we hold flatly that * * * the injured person has two years after the date of 'discovery' to institute suit." It noted that its views were in accord with the majority opinion in *Fox v. Passaic General Hospital*, 135 *N. J. Super.* 108 (App. Div. 1975), which we have reviewed in the companion appeal mentioned above.

The dissenter in the Appellate Division viewed the nature of plaintiffs' claim — improper treatment and diagnosis — as not falling within those classes of cases to which the discovery rule had theretofore been applied. He also pointed out that, even viewing the facts most favorably to plaintiffs, the basis of their claim was discovered before the limitations period (as measured from the last day of treatment) would have barred an action. While eschewing an inflexible rule that any claim discovered within the statutory time period must be pursued within it, he nevertheless considered the facts of this case as requiring such a determination. He stated: "* * * I do not see any equities whatever mandating the utilization of the so called 'discovery' rule." The dissent cited and relied on the reasoning of the dissenting Appellate Division opinion in *Fox*.

Leave to appeal to this court was granted October 14, 1975. 69 *N. J.* 85 (1975).[1]

In view of our holding in *Fox, supra,* we must reject the first ground of defendants' appeal. If the discovery rule applies at all in this case (and we hold hereinafter that it does), the plaintiffs' action was *prima facie* timely instituted, having been filed within two years of their discovery of their cause of action. If defendants properly raise a prejudice issue, within our declaration in *Fox,* that will be for determination by the trial court on remand.

We proceed to address the other issue presented — the applicability of the discovery rule to a claim of negligence in treatment and diagnosis.

Defendants' reliance is on the rationale of *Fernandi v. Strully, supra,* and other malpractice cases which followed in its wake. These involved situations of such obvious negligence as the leaving by the surgeon of a foreign object in the body of the patient, and the courts stressed that they did not "entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim" from the lapse of time in the filing of the action. See 35 *N. J.* at 450–451. See also *Rothman v. Silber,* 90 *N. J. Super.* 22, 30 (App. Div.), certif. den. 46 *N. J.* 538 (1966), where the discovery principle was disallowed in an action for malpractice based on the improper administration of anesthesia. Application of the principle was thought unwarranted there because (90 *N. J. Super.* at 31):

> The question of liability in such cases becomes dependent upon plaintiff's credibility and upon expert testimony upon matters of professional diagnosis, judgment or discretion, factors upon the absence of which the Supreme Court placed significant reliance in *Fernandi* (35 *N. J.,* at p. 450).

Even when the discovery principle began to be applied to claims other than medical malpractice our decisions con-

---

[1] Review should more properly have been sought by petition for certification.

tinued to express concern over the possibility of "fraudulent, false, frivolous, speculative or uncertain" claims arising from the lapse of time consequent upon effectuation of the discovery rule. *New Market Poultry Farms, Inc. v. Fellows,* 51 *N. J.* 419, 425 (1968) (action against land surveyor for negligent miscalculation); and see *Diamond v. N. J. Bell Telephone Co.,* 51 *N. J.* 594, 600 (1968) (action against telephone company for negligent installation of a conduit).

However, any notion that this Court regarded the self-evident negligence situation as the exclusive area for application of the discovery principle was dissipated in the *Diamond* case, *supra,* when the court applied the principle to an ordinary negligence claim based upon conduct of the defendant which had occurred nine years before. It said (51 *N. J.* at 601):

> In the medical malpractice situation, the presence of a foreign object provides a ready basis for inferences of proximate causation and negligence without further proof. Similar inferences benefiting plaintiffs do not as readily flow from the mere presence of an authorized underground conduit in the vicinity of a sewer line. Defendants may forcefully urge at trial that the broken "clean-outs" on plaintiffs' sewer line were caused by the normal strain of constant use, extraordinary pressures from overhead traffic, or even inadequate workmanship or installation of the sewer line itself. Plaintiffs will have to shoulder the burden of persuading a jury that negligent installation of defendant's telephone conduit was to blame. *Rosenau v. City of New Brunswick, supra,* 51 *N. J.* [130] at p. 136. Thus, elimination of the statute of limitations as a barrier to this suit does not provide the plaintiffs here with a windfall or a guaranteed recovery.

The court concluded the *Diamond* opinion with the prophetic observation that "many of the same considerations discussed above will undoubtedly recur in situations not yet addressed by this Court. We prefer to postpone discussion of the ultimate bounds of the discovery rule until appropriate cases arise." 51 *N. J.* at 601.

Finally, in *Lopez v. Swyer, supra* (62 *N. J.* 267), we made it clear that the discovery rule would not be me-

chanically restricted, in the medical malpractice area, to foreign body and similar cases. We expressly held it potentially applicable to a case of claim of radiation burns. While the fact of injury to the patient became obvious at a fairly early date after treatment, the matter of the negligence of the treating physician was more dubious; yet we left it open for the trial judge, on remand, to determine the applicability of the discovery rule to the fact case presented. Treatment by the defendant radiation therapist in *Lopez* concluded February 13, 1962, and the action was not instituted until September 18, 1967. We there said (62 *N. J.* at 273) that:

> While *Fernandi* expressly confined the discovery rule to foreign body malpractice actions, 35 *N. J.* at 450, 451, subsequent decisions have gone much further and have acknowledged the relevance of the doctrine whenever equity and justice have seemed to call for its application. [citing primarily cases outside the medical malpractice area].

It is thus clear that although the early stages of the development in this State of the discovery rule in medical malpractice cases confined it to foreign object and other obvious negligence situations, we abandoned such limitations in *Lopez.* The precise question now presented is whether we should not, in the logical progression of the "equity and justice" approach proclaimed in *Lopez,* hold the discovery doctrine broadly applicable in the generality of medical malpractice actions, including claims of improper treatment and diagnosis, as here. It is our considered determination that we should do so.

In other areas of tort law, where policy considerations related to the assurance of a remedy to an injured plaintiff have conflicted with those concerned with the possibility of fraud and imposition by claimants, the former have been more influential with this court. Thus in *Cohen v. Kaminetsky,* 36 *N. J.* 276, 283 (1961) (host-guest relationship), Chief Justice Weintraub stated:

It is the regular business of the courts to find the truth. We ought not deny what should be due the many for fear that the judicial process cannot weed out the spurious claims of a few.

And in *Immer v. Risko,* 56 *N. J.* 482, 494 (1970) (interspousal immunity doctrine), Justice Proctor quoted with approval the following language of *Borst v. Borst,* 41 *Wash.* 2d 642, 653–654, 251 *P.* 2d 149, 155 (1952):

> The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. *Rozell v. Rozell, supra* [281 *N. Y.* 106, 22 *N. E.* 2d 254 (Ct. App. 1939)].

A steadily growing and now predominant line of decisions in other states which recognize the discovery rule, as such, acknowledges there is no just basis for distinguishing between different kinds of malpractice claims in applying the discovery rule, since, in all, the basic hardship and injustice of denying an injured plaintiff his day in court remains. See *Lipsey v. Michael Reese Hospital,* 46 *Ill.* 2d 32, 262 *N. E.* 2d 450, 455 (Sup. Ct. 1970); *Hays v. Hall,* 488 *S. W.* 2d 412 (Sup. Ct. Tex. 1973); *Renner v. Edwards,* 93 *Idaho* 836, 475 *P.* 2d 530 (Sup. Ct. 1970); *Janisch v. Mullins,* 1 *Wash. App.* 393, 461 *P.* 2d 895 (Ct. App. 1969); *Frohs v. Greene,* 253 *Or.* 1, 452 *P.* 2d 564 (Sup. Ct. 1969). Other cases also applying the rule, expressly or impliedly, to negligent diagnosis or treatment are *Thompson v. County of Fresno,* 59 *Cal.* 2d 686, 31 *Cal. Rptr.* 44, 381 *P.* 2d 924 (Sup. Ct. 1963); *Baines v. Blenderman,* 223 *N. W.* 2d 199 (Sup. Ct. Ia. 1974); *Owens v. Brochner,* 172 *Colo.* 525, 474 *P.* 2d 603 (Sup. Ct. 1970); *Wilkinson v. Harrington,* 104 *R. I.* 224, 243 *A.* 2d 745 (Sup. Ct. 1968); *Yoshizaki v. Hilo Hospital,* 50 *Haw.* 150, 433 *P.* 2d 220 (Sup. Ct. 1967); *Johnson v. Caldwell,* 371 *Mich.* 368, 123

*N. W.* 2d 785 (Sup. Ct. 1963) ; *Spath v. Morrow,* 174 *Neb.* 38, 115 *N. W.* 2d 581 (Sup. Ct. 1962) ; *Iverson v. Lancaster,* 158 *N. W.* 2d 507 (Sup. Ct. N. D. 1968) ; *Landis v. Delp,* 327 *F. Supp.* 766 (E. D. Pa. 1971) (applying Pennsylvania law).

Supporting what is now the majority rule are Comment, 21 *Rutgers L. Rev.* 778, 785–788 (1967) ; Note, 29 *U. Pitt. L. Rev.* 341 (1967).

For an example of the minority approach, see *Schiffman v. Hospital for Joint Diseases,* 36 *A. D.* 2d 31, 319 *N. Y. S.* 2d 674 (1971), motion for leave to appeal denied 29 *N. Y.* 2d 483, 324 *N. Y. S.* 2d 1028, 273 *N. E.* 2d 577 (Ct. App. 1971).

The essential good sense and merit of the majority rule is well presented by the opinion of Judge Koelsch, refusing to limit Idaho's discovery rule to foreign object cases, in *Owens v. White,* 342 *F.* 2d 817, 819 (9th Cir. 1965), where he said:

It is perhaps also true that the claim in a suit involving a foreign object as in *Billings* [*Billings v. Sisters of Mercy of Idaho,* 86 *Idaho* 485, 389 *P.* 2d 224] is more apt to be bona fide than one which will undoubtedly depend upon testimony or other indirect evidence for proof. But this factual difference is not controlling. It merely relates to the manner of proof. Grant, that the possibility of fraud is increased in the latter instance. But plainly, the possibility does not remotely approach the point where possibility becomes probability and hence a decisive reason for cutting off the claim. The usual presumption is that a person submits a claim in good faith. To conclude otherwise requires a resort to speculation and reliance upon suspicion. In addition, the burden of establishing a claim rests upon the plaintiff, and the stale nature of the evidence cuts two ways, militating against him as well as the defendant.

When one considers our preservation of the rights of defendants in relation to prejudice incident to delay in institution of the action, as declared in *Fox, supra,* and reaffirmed hereinabove, it becomes clear that the course of justice is best served by following the predominant rule on the question at issue. We therefore hold that the discovery

rule is generally to be applicable to actions for medical malpractice in the areas of treatment and diagnosis as well as other kinds of malpractice.

Since we agree, for the foregoing reasons, with the Appellate Division determination that summary judgment was properly denied defendants in this case, the judgment will be affirmed; no costs on this appeal.

CLIFFORD, J. (dissenting). While I agree that the discovery rule should apply to a claim of medical malpractice based upon improper treatment and diagnosis, I do not share the view that recognition of the rule automatically affords plaintiffs two years after the date of discovery to institute suit (absent defendants' showing of prejudice). As I have endeavored to indicate in my dissenting opinion in our companion case of *Fox v. Passaic Gen. Hosp.*, 71 *N. J.* 122 (1976). I think the rule should give a plaintiff, who by force of equitable principles successfully invokes it, the benefit of an "expanded" statute of limitations only upon a showing (a) that a plaintiff who discovers his cause of action *after* expiration of the statutory time limit has filed his complaint expeditiously, *Fernandi v. Strully*, 35 *N. J.* 434, 442, 451 (1960) ; or (b) that a plaintiff who discovers his cause of action *before* the running of the two-years time limit has instituted suit after that limit because the period remaining between discovery and expiration of the statute did not, under the particular circumstances, constitute a reasonable time within which expeditiously to file his complaint, see *Rothman v. Silber*, 90 *N. J. Super.* 22, 32, 37–8 (App. Div.), certif. den., 46 *N. J.* 538 (1966) (concurring opinion of Gaulkin, S. J. A. D.).

I mean no disrespect to anyone connected with this lawsuit, and assuredly not to those of my brethren who see this case differently from the way I do; but I am constrained to observe that tested by any requirement of expeditious institution of suit, it impresses me as at best a trifle ingenuous and at worst just plain fatuous to conclude that plaintiffs

should not be held to the ordinary statutory period for the formal prosecution of their claims. Taking October 8, 1971 as the last date of treatment, it should be noted that at some point within the succeeding five and a half months plaintiffs were sufficiently suspicious of their treatment at defendants' hands to have engaged counsel for the purpose of pursuing the matter further. On March 16, 1972 the attorney wrote the physician who performed corrective surgery to elicit his opinion as to whether defendants had committed malpractice. On June 14, 1972 that physician expressed the view that Mrs. Moran had not received "proper attention."[1] In December, 1972 a different doctor categorically characterized defendants' treatment as malpractice. On January 9, 1973 plaintiffs' attorney wrote each defendant threatening suit on account of negligent treatment of Mrs. Moran. After reviewing these facts Judge Crahay, dissenting below, declared:

At the very best, from plaintiffs' standpoint, [the trial judge] could not have found a "discovery" date later than January 9, 1973 (when counsel wrote defendants). As I see it, an undisturbable finding would have been a much earlier date, at least June 14, 1972 (when Dr. Douvres rendered his opinion to plaintiffs' counsel). Whatever the fact — and I would let plaintiffs choose the date — I view the error here as one of law calling for summary disposition.

---

[1]The majority points out that counsel appraised this opinion as "equivocal." Consideration of the doctor's amplification of his conclusion that "proper attention" had not been given Mrs. Moran leaves little room for uncertainty as to how he felt. Deferring to counsel for evaluation of the "legal merits as to whether malpractice is involved or not," the doctor gave the basis for his opinion as follows:

If the patient did not truly have a barium enema or sigmoidoscopy in the entire four years this is not proper practice. Most importantly, however, if the patient did have regular visits to the doctor from July until October, 1971 then I cannot conceive any doctor allowing the patient's condition and state to deteriorate to the critical level in which I found her and not take measures to secure better treatment for her. Does this constitute malpractice or just poor "doctoring"? This you will have to evaluate.

Exactly so. Plaintiffs had almost nine full months from January 9, 1973 within which to meet the limit of the statute of limitations. They did not do so, despite the fact, again as emphasized by Judge Crahay, that "[w]ell within the expiration of the two year period of Mrs. Moran's last attendance by defendants, plaintiffs at least (1) were aware of their claims; (2) engaged experienced counsel to pursue them; (3) had an expert's expression of improper treatment; (4) had a willing medical trial witness; (5) had written — through counsel — of their intentions to make claim; and (6) had threatened a timely suit."

In these circumstances, with at least nine months remaining after "discovery" before the statute of limitations barred plaintiffs' suit, I would hold that more than reasonable time remained for them expeditiously — even casually, languidly, desultorily, at their leisure — to institute suit. Ordinarily in the context of statutes of limitations we speak in terms of sleeping on one's rights; but this case comes closer to outright hibernation. That being so, I would give effect to considerations of repose and to the statute. I therefore vote to reverse and enter judgment for defendants.

MOUNTAIN and SCHREIBER, JJ., join in this dissenting opinion.

*For affirmance*—Chief Justice HUGHES, Justices SULLIVAN and PASHMAN and Judge CONFORD—4.

*For reversal*—Justices MOUNTAIN, CLIFFORD and SCHREIBER—3.