594

HOWARD AND DORA DIAMOND T/A MORRISTOWN PIC-
TURE FRAME AND GLASS COMPANY, PLAINTIFFS-
APPELLANTS, v. NEW JERSEY BELL TELEPHONE
COMPANY, (A CORPORATION OF THE STATE OF NEW
JERSEY), AND GRAY CONSTRUCTION COMPANY (A
CORPORATION OF THE STATE OF NEW JERSEY), DE-
FENDANTS-RESPONDENTS.

Argued February 19, 1968—Decided May 20, 1968.

*Mr. John S. Donington* argued the cause for plaintiffs-appellants (*Messrs. Weiner, Weiner & Glennon,* attorneys; *Mr. Donington,* of counsel and on the brief).

*Mr. Joel A. Murphy* argued the cause for defendants-respondents (*Messrs. Mills, Doyle & Muir,* attorneys; *Mr. Murphy,* of counsel and on the brief).

The opinion of the court was delivered by

SCHETTINO, J. This case requires another examination of when a cause of action "accrues" for statute of limitations purposes. See also *New Market Poultry Farms, Inc. v. Fellows,* 51 *N. J.* 419 (1968); *Rosenau v. City of New Brunswick,* 51 *N. J.* 130 (1968); *Fernandi v. Strully,* 35 *N. J.* 434 (1961).

In 1957, defendant Bell Telephone Company installed an underground conduit on plaintiffs' property in Morristown.[1] The conduit was installed over plaintiffs' sewer line and, allegedly, the work was performed in such a negligent manner as to break the "clean-outs" on the sewer line. As a result, sediment gradually accumulated in the line until, on February 1, 1966, a back-up occurred and plaintiffs' property was flooded. Until that moment, plaintiffs had been unaware of any damage or malfunction in the sewer line. But after the back-up, plaintiffs caused excavations to be made which disclosed the condition of the sewer line and the cause of that condition.

In July 1966, approximately five months after the sewer line became clogged, plaintiffs instituted a negligence action against the two defendants. Defendants moved for judgment on the pleadings on the basis that the action was barred by the statute of limitations. The trial court denied the motion.

On appeal from this interlocutory order, the Appellate Division reversed in an opinion which held that the action had accrued in 1957 and, consequently, was barred by the six-year limitations period contained in *N. J. S.* 2A :14–1. 97 *N. J. Super.* 1 (1967). We granted certification. 50 *N. J.* 405 (1967).

Traditionally, "a plaintiff's cause of action accrues for limitation purposes when he suffers actual consequential damage or loss from the defendant's negligence." *Rosenau v. City of New Brunswick, supra,* 51 *N. J.,* at *p.* 138; see "Developments in the Law — Statutes of Limitations," 63 *Harv. L. Rev.* 1177, 1201 (1950). Where the plaintiffs' only injuries here those flood damages resulting from the sewer back-up, their claim might well fall within this "actual damages" doctrine. The back-up did not occur until 1966 and the negligence suit was filed in that same year. At oral

---

[1] The actual work was performed by a contractor, defendant Gray Construction Company.

argument, however, it became evident that plaintiffs' damages consist primarily of the costs of repairing the broken sewer "clean-outs" — harm sustained upon the installation of the underground conduit in 1957. Under the customary rule that ignorance of a claim does not toll the running of the limitations period (see *Fernandi v. Strully, supra,* 35 *N. J.,* at *p.* 439), this suit would have been barred after 1963.

 We must, therefore, consider the applicability of the recently evolved discovery rule. Under that doctrine, a cause of action accrues only when the plaintiff knows or should reasonably know of his injury. In that manner he is relieved of the impossible task of asserting a claim before its existence may reasonably be known to him.

In New Jersey, the discovery rule has, to date, been applied only in certain limited circumstances — in a foreign object malpractice case (*Fernandi v. Strully, supra*) and in the case of a negligent land survey (*New Market Poultry Farms, Inc. v. Fellows, supra*). We have recognized, however, that other situations may well be appropriate for extension of the same salutary rule. See *Fernandi v. Strully, supra,* 35 *N. J.,* at *p.* 439. For reasons to be expressed, we are of the opinion that the case before us presents one such appropriate instance.

Many courts have recognized the obvious inequity of allowing a limitations period to expire while actionable harm is hidden beneath the surface of the earth, unascertainable either by ordinary observation or by special alertness on the part of a landowner. In the early case of *Lewey v. H. C. Frick Coke Co.,* 166 *Pa.* 536, 31 *A.* 261 (1895), defendants had tunneled deep under the plaintiff's adjacent property and removed 4,000 bushels of coal. Eleven years later plaintiff first became aware of the trespass and sued for damages. Defendants raised in opposition the statute of limitations normally applicable to trespass actions. In rejecting that defense, the Pennsylvania Supreme Court held that the statute of limitations did not commence against an underground trespass until the time of actual discovery of the

trespass, or until the moment when discovery reasonably became possible. The court commented:

"To require an owner, under such circumstances, to take notice of a trespass upon his underlying coal at the time it takes place, is to require an impossibility; and to hold that the statute begins to run at the date of the trespass is in most cases to take away the remedy of the injured party before he can know that an injury has been done him. A result so absurd and so unjust ought not to be possible." 31 A. at p. 263.

Since the *Lewey* decision, numerous cases have adopted the same rationale and applied a discovery rule to instances of "subterranean trespass." See, *e. g., Cole v. Eastern Gas and Fuel Associates,* 322 F. 2d 506, 510–511 (4 Cir. 1963); *Daniels v. Beryllium Corp.,* 227 F. Supp. 591, 594 (E. D. Pa. 1964) (*dictum*); *Petrelli v. West Virginia-Pittsburgh Coal Co.,* 86 W. Va. 607, 104 S. E. 103 (1920); *Howard v. United Fuel Gas Co.,* 248 F. Supp. 527 (S. D. W. Va. 1965); Annot., 37 A. L. R. 1182 (1925). That the doctrine has not previously found expression in New Jersey cases is not surprising, as the factual setting involved is found primarily in the mining areas of the nation. The underlying principle, that a cause of action for underground harm not susceptible to observation does not accrue until the harm can reasonably be ascertained, is equally valid in this jurisdiction. That this is not a mining area only ensures that this factual complex requiring application of the discovery rule is likely to recur infrequently. Moreover, we reject any theoretical distinctions based on totally secretive operations or active concealment by defendants in the mining cases. As the *Lewey* decision illustrates, it is not these considerations, but rather the helpless position of plaintiffs, which dictate application of a discovery rule in circumstances in which the dangers of fraud or imposition upon defendants are not excessive.[2]

---

[2] Other courts have advanced similar views concerning the accrual of actions without openly adopting a discovery rule. This *sub silentio* application of the discovery principle often occurs when negligence

This broad view of the underground trespass cases is supported by examination of another case—remarkably similar to the one before us—adopting the rationale of the *Lewey* decision. In *Smith v. Bell Telephone Co. of Pennsylvania,* 397 *Pa.* 134, 153 *A.* 2d 477 (1959), the defendant had, in 1948, installed telephone conduit under plaintiff's property. In 1951, plaintiff first noticed minor seepage in his basement resulting from blockage of the sewer line running in front of his house. But his effort to discover the cause of the back-up did not succeed until 1956 when he tunnelled under the sidewalk and found that defendant's phone conduit had crushed and blocked the sewer line. Suit was brought in 1957 seeking damages for defendant's negligent installation of conduit. After holding that a jury could reasonably infer that the installation had been responsible for the crushed sewer pipe, the Pennsylvania Supreme Court noted that the statute of limitations would not pose an absolute bar to the action:

"[T]he statute runs, on causes arising from sub-surface injury, from the time of discovery of the cause of the harm or the time when the cause of the harm reasonably should have been discovered, whichever is earlier." 153 *A.* 2d at *p.* 481.

---

has caused gradual water, gas, or sewage seepage, incapable of ascertainment until the seepage produces severe property damage. In this situation, many cases have held that despite the presence of minor initial harm, the limitations period should not run "until the damage is apparent and it becomes obvious that such damage is of a permanent character." *Harper-Turner Oil Co. v. Bridge,* 311 *P.* 2d 947, 949 (*Okla.* 1957); see *City of Springdale v. Weathers,* 241 *Ark.* 772, 410 *S. W.* 2d 754 (1967); *Nance v. Cook,* 240 *Ark.* 336, 399 *S. W.* 2d 262 (1966); *Hankins v. Borland,* 431 *P.* 2d 1007, 1010–1011 (*Colo.* 1967); *Senauke v. Bronx Gas & Electric Co.,* 157 *Misc.* 948, 284 *N. Y. S.* 710 (*Mun. Ct.* 1936); *St. John's Church v. Equitable Gas Co.,* 5 *Dist. & Co. R.* 2d 655 (*Pa. C. P.* 1955); *cf. Essex Wire Corp. v. M. H. Hilt Co.,* 263 *F.* 2d 599 (7 *Cir.* 1959). While not acknowledging the discovery rule by terms, these decisions which disregard minor, unknowable harm for limitations purposes have clearly been influenced by the same equitable considerations which underlie the discovery rule.

Having determined that a "discovery rule" was applicable, the court left to a jury the question of whether or not the plaintiff had exercised reasonable diligence in ascertaining his injury.

■■ We are in agreement with the above decisions holding that to permit the running of the limitations period while a plaintiff's injury is hidden from observation beneath the ground would be overly harsh and unjust. We accordingly hold that the discovery rule extends where, as here, the location of the negligent conduct and resultant harm beneath the surface of the earth prevents the injured party from immediately ascertaining the harm inflicted. Courts have always "sought to apply [the statute of limitations] with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices." *Fernandi v. Strully, supra,* 35 *N. J.,* at *p.* 449. This standard, in cases such as the one at hand, demands that the limitations period not commence at least until the harm incurred by a plaintiff becomes reasonably apparent or ascertainable. See 63 *Harv L. Rev.* 1177, 1204 (1950).

This does not mean that considerations of repose and fairness to defendants are to be ignored, but rather that under the circumstances fairness to plaintiffs outweighs whatever dangers of imposition exist in application of a discovery rule. *Fernandi v. Strully, supra,* 35 *N. J.,* at *p.* 450–51. The circumstances here — particularly the sub-surface location of the harm — tend to negative the possibilities that plaintiffs slept on their rights or fabricated their claims. The difficulties faced by plaintiffs in asserting their claim at an early date paralleled the difficulties confronted by the plaintiffs in *Fernandi* and *New Market Poultry, Inc., supra.* As was the case in *Fernandi,* both the initial negligent conduct and the resulting damages here were shrouded from observation or detection. A layman could no more be expected to supervise the construction of a pipeline which might cause harm beneath his property than to supervise a medical opera-

tion which might leave a foreign object within his body. There has been no suggestion that plaintiffs, in the exercise of ordinary supervision over their property, could or should have discovered their damages prior to 1966. .

■ It is also important that the passage of time in this type of case, while perhaps dulling memories and obscuring evidence, must inevitably handicap plaintiffs, and not just defendants, in the assertion of their contentions. *Cf. Owens v. White*, 342 F. 2d 817, 819 (9 *Cir.* 1965). The absence of a permanent physical object linking plaintiff's harm to defendant's initial conduct measurably compounds a plaintiff's task of proving proximate causation and negligence. In the medical malpractice situation, the presence of a foreign object provides a ready basis for inferences of proximate causation and negligence without further proof. Similar inferences benefiting plaintiffs do not as readily flow from the mere presence of an authorized underground conduit in the vicinity of a sewer line. Defendants may forcefully urge at trial that the broken "clean-outs" on plaintiffs' sewer line were caused by the normal strain of constant use, extraordinary pressures from overhead traffic, or even inadequate workmanship or installation of the sewer line itself. Plaintiffs will have to shoulder the burden of persuading a jury that negligent installation of defendant's telephone conduit was to blame. *Rosenau v. City of New Brunswick, supra,* 51 *N. J.,* at *p.* 136. Thus, elimination of the statute of limitations as a barrier to this suit does not provide the plaintiffs here with a windfall or a guaranteed recovery.

Of course, many of the same considerations discussed above will undoubtedly recur in situations not yet addressed by this Court. We prefer to postpone discussion of the ultimate bounds of the discovery rule until appropriate cases arise. The problem cannot yet be handled in purely abstract terms.

The judgment of the Appellate Division is reversed and the matter remanded to the trial court with costs to abide the outcome.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL and SCHETTINO—5.

*For affirmance*—None.