151 N.J. Super. 587 (1977)
377 A.2d 733
PETER J. RESCIGNO, PLAINTIFF,
v.
JOHN A. PICINICH, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 30, 1977.
*589 Messrs. Rooney, Peduto & Rooney, attorneys for plaintiff (Mr. John Peduto appearing).
Mr. Robert F. Colquhoun for defendant (Mr. James Sullivan, appearing).
YOUNG, J.C.C., Temporarily Assigned.
The efforts of plaintiff, Peter J. Rescigno, in resisting a motion for an order of summary judgment present for determination questions which require an interpretation and application of the terms of the tort liability exemption section of the New Jersey Automobile Reparation Reform Act (No-Fault Law). More particularly, should this court extend the discovery rule to an auto negligence action in which permanent injuries are *590 alleged and hold that the cause of action does not accrue, and thus the statute of limitations does not commence to run, until the plaintiff has acquired knowledge that his injuries are of a permanent nature or, alternatively, until he learns that his medical expenses have amounted to or are likely to amount to the threshold of $200? N.J.S.A. 39:6A-1 et seq., 39:6A-8; N.J.S.A. 2A:14-2.
Plaintiff filed his complaint on March 1, 1977, more than two years following the date of the automobile accident (February 2, 1975), which gives rise to the claim. The gravamen of the claim as well as plaintiff's legal position are conjoined in paragraphs 3 and 4 of his pleading:
3. As a proximate result of the negligence of the defendant, plaintiff was seriously injured in and about his head, arms, legs and body, a pre-existing condition was aggravated and he was required to receive medical and hospital attention for his injuries, which are permanent in character, and which prevented him from attending to his usual duties for a long period of time.
4. Plaintiff is eligible to maintain this action under the No Fault Statute as his medical expenses exceed the sum of $200.00 and he has a permanent injury. Plateau of $200.00 was reached on March 2, 1975.
Defendant interposed as a separate defense the bar of the statute of limitations, N.J.S.A. 2A:14-2, and invokes that defense on the pending motion for an order of summary judgment.
The chronology of events as drawn from the complaint, plaintiff's affidavit and the exhibits annexed thereto is here summarized. As a result of a collision of automobiles operated by the parties on February 2, 1975 plaintiff alleges that he sustained soft-tissue injuries for which he was given first-aid treatment at North Hudson Hospital, Weehawken, New Jersey. He consulted his personal physician the following day and received treatment for hypertension. Later, on February 11 and February 20, he was treated for viral pneumonia, for which he was hospitalized from February 26 to March 15, 1975 at Doctor's Hospital, New York City. *591 Plaintiff concludes his affidavit with the statement: "On March 21, 1975, I received a bill from Dr. Seiffer and it was then that I learned that my medical expenses which I attribute to this accident were in excess of $200.00." Annexed to the affidavit are photocopies of bills on the stationery of Bertram H. Seiffer, M.D., reflecting charges of $160 for the visits during February 1975 and $375 for visits during March 1975  for a total of $535 which was paid April 2, 1975, as per the physician's endorsement on his statement dated March 20, 1975. There is also annexed a copy of a cash receipt issued by the hospital, dated March 15, 1975, acknowledging payment of its bill of $749.84 for plaintiff's account.
Plaintiff's initial argument is that his cause of action did not accrue for limitations purposes until he became aware that he had incurred $200 in eligible medical expenses. That financial plateau was reached, he states, with the medical charges of March 2, 1975. Since he did not receive those charges from his physician until March 21, 1975 plaintiff asserts that he had two full years thereafter within which to file his action, so that a filing on March 1, 1977 was timely. Plaintiff urges upon the court the reasoning and the conclusions reported in Montag v. Bergen Bluestone Co., 145 N.J. Super. 140 (Law Div. 1976).
The holding in Montag is that a cause of action under the New Jersey Automobile Reparation Reform Act to recover damages for non permanent soft-tissue injury did not accrue for limitation purposes until plaintiff actually incurred or should have known that she would incur $200 in eligible medical expenses. 145 N.J. Super. at 143. It is readily apparent that the case at bar presents an element from which a basic distinction may be drawn with the Montag case, namely, that plaintiff here alleges permanent injury. When a permanent injury is sustained there is no necessity to await the accrual of a monetary threshold. When an injury, even if of soft tissue, is of a serious nature, variously described as "permanent" in the statute and *592 as a "major injury" by the consultant to the legislative commission which submitted the legislation, there is no exemption from tort liability. N.J.S.A. 39:6A-8; Iavicoli, No Fault and Comparative Negligence in New Jersey, § 54 at 131 (1973). Moreover, it has been held that when permanent injury is alleged, a defendant may accept such an allegation at face value so that there is no duty to affirmatively plead the statutory exemption under the No Fault Law. Seskine v. Cone, 139 N.J. Super. 307 (Law Div. 1976).
However, taking preliminary note of the fundamental distinction between the Montag case and the pending action does not dispose of the issues raised. Plaintiff contends that, on the record submitted, the application of the "discovery" rule will redeem his cause of action from the challenge of the statute of limitations. Defendant resists such an extension of the discovery rule and further argues that he would be prejudiced thereby in the circumstances of this case.
The record consists of the pleadings and of plaintiff's affidavit, together with exhibits annexed thereto. Plaintiff's affidavit is phrased in subjective conclusions: "It is my opinion that this cold which was diagnosed as viral pneumonia was the result of the accident. * * * The viral pneumonia left me with an uneven heart beat." The affidavit makes reference to an attached copy of a report from Dr. Seiffer. The treating physician, dated May 10, 1977, which recites in relevant part: "Condition at time of 1st Examination  (1) sprain with traumatic synovitis; (2) abrasion rt. forearm and rt. elbow; (3) laceration rt. knee; (4) contusion nose with epistaxis; (5) aggravation of pre-existing hypertensive cardiovascular disease." Following the words "Nature of Any Permanent Disability," Dr. Seiffer wrote: "None." Notwithstanding the questionable evidence of permanent injury, the allegation will for the purposes of this motion be considered at face value. The key issue is whether plaintiff's cause of action accrued on February 2, 1975 or sometime thereafter, and the resolution of that issue will *593 be dispositive of the claim for permanent injuries as well as the claim for soft-tissue injuries with allowable medical expenses more than $200.
As the No Fault Law does not contain a limitations provision in respect to tort liability, reference must be made to the general statute of limitations, N.J.S.A. 2A:14-2, as that statute has been interpreted and applied by the courts of New Jersey. The statute, pertaining to personal injury actions, provides as follows:
Every action at law for injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.
The Legislature has not exercised its power to define when a civil cause of action shall be deemed to have accrued, leaving the question entirely to judicial interpretation and administration. See the dissertation on the subject by Justice Jacobs in Rosenau v. New Brunswick, 51 N.J. 130 (1968). It has always been acknowledged as a statute of repose, Tortorello v. Reinfeld, 6 N.J. 58 (1950), and our courts have sought to apply it with due regard to that underlying policy of repose, except in a carefully delineated type of case presently to be noted. See Rosenau, supra, 51 N.J. at 136-137; Burd v. New Jersey Telephone Co., 149 N.J. Super. 20, 30 (App. Div. 1977).
Traditionally, a plaintiff's cause of action accrues for limitation purposes when he suffers actual consequential damage or loss from a defendant's alleged negligence or wrongdoing. Diamond v. N.J. Bell Telephone Co., 51 N.J. 594, 596 (1968). As expressed in Biglioli v. Durotest Corp., 44 N.J. Super. 93, 101 (App. Div. 1957): "A cause of action in negligence does not arise unless there has been, first, a negligent act or default and, second, an actual injury, however slight, proximately resulting therefrom."
Commencing with Fernandi v. Strully, 35 N.J. 434 (1961), the Supreme Court recognized the so-called "discovery" *594 rule in connection with the defense of the statute of limitations in medical malpractice actions. Under that rule, the statutory period of limitations begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, that an injury has been sustained from acts constituting the alleged malpractice. The Supreme Court reflected its cautious approach by noting that "the foreign object malpractice cases, with which we are particularly concerned, present special considerations which may fairly be said to set them apart," and remanded plaintiff's action squarely on the considerations that "the cause of action was unknown and unknowable to her until shortly before she instituted suit," and that plaintiff expeditiously instituted suit after acquiring the knowledge. At 441-42, 451. Similar expressions of extenuating circumstances and of circumscription are found in subsequent applications of the discovery rule.[1] Most recently, the court, citing the "equity and justice" approach followed in Lopez, held that the discovery rule was broadly applicable in the generality of medical malpractice actions, Moran v. Napolitano, 71 N.J. 133, 139 (1976), which appears to overrule the restrictive holding in Rothman v. Silber, 90 N.J. Super. 22, 30 (App. Div. 1966), certif. den. 46 N.J. 538. The companion case, Fox v. Passaic General Hospital, 71 N.J. 122 (1976), held that a plaintiff who discovers the existence of a malpractice cause of action prior to the expiration of two years after defendant's actionable conduct, has two full years after such discovery to bring his action unless (a) the defendant can establish that the lapse of time *595 between expiration of the two years after the actionable event and the date of institution of suit peculiarly or unusually prejudiced him, and (b) unless there was reasonable time for plaintiff to institute his action between discovery of the cause of action and expiration of two years after the actionable event.
In the case at bar the injury to the plaintiff coincided with defendant's alleged negligent act  the two elements required to give rise to a cause of action. Moreover, plaintiff was simultaneously aware that he had sustained damage. These facts distinguish this case from such discovery rule cases as New Market Poultry Farms, Inc. v. Fellows, supra, 51 N.J. at 425-426, and Diamond v. N.J. Bell Telephone Co., supra, 51 N.J. 594 (1968), in which cases the plaintiffs were not aware that they had been damaged until long after the statute of limitations had expired. In those cases cited the court also concluded that plaintiffs' lack of awareness did not result from any lack of diligence on their part. Therefore, it was held that the respective causes of action accrued when the damages became ascertainable, and that the actions were maintainable for the reason that they were filed promptly after damages were discovered. By contrast, plaintiff here concedes that he was treated immediately following the accident of February 2, 1975, but he argues that he did not become aware of the permanent nature of his injuries, as well as the accumulation of medical expenses of $200 until March 21, 1975. The complaint was not filed until March 1, 1977. In the interim plaintiff had on November 5, 1975 been served with summons and complaint in a companion tort action arising from the same accident.[2] Plaintiff had 22 months from March 21, 1975 *596 within which to meet the limit of the statute of limitations. He failed to do so notwithstanding his knowledge of the extent of his claims, both in monetary terms and in terms of their nature and duration. Lastly, there is no hint of concealment or of fraud attributable to defendant.
The common component of the discovery cases is that the genesis of the cause of action was unknown and unknowable (and hence did not accrue) until discovery of the injury or damage. By contrast, knowledge of the genesis of a claim for damages arising from negligence by motor vehicle is not a matter of "discovery." The extent or quantum of damages may not be fully known as of the date of the occurrence, but the No Fault Law does not make such knowledge a prerequisite of the maintainability of the action itself. Thus, the tort liability exemption provision of N.J.S.A. 39:6A-8 was not intended to alter the common law rule that a cause of action accrues when negligence or default proximately results in injury or damage. The distinction here drawn is between the right to sue on the one hand and the right to recover on the other.
This conclusion is supported by an analysis of the language of the tort liability exemption provision of the No Fault Law, N.J.S.A. 39:6A-8, and by comparison of the statutes of sister states. What is the species of legislative enactment that the tort liability exemption section represents? The section is entitled "Tort exemption; limitation on the right to damages." The section is a species of proviso which specifies the categories of individuals who are exempted from tort liability for damages. They are owners and registrants who must maintain the required insurance coverage and persons who have a right to collect personal injury protection benefits. The tort exemption will become operational only if the bodily injury is confined solely to the soft tissue of the body and the allowable medical *597 expenses are less than $200. There follows the legislative declaration that there shall be no exemption from tort liability for damages if the injured party has sustained death, or permanent disability, permanent significant disfigurement, permanent loss of any bodily function or loss of a body member in whole or in part.
The Legislature did not intend by the inclusion of the tort liability exemption provision to deprive the courts of personal or subject-matter jurisdiction of claims arising under the insurance scheme. Rather, the tort liability exemption serves to impart a refinement upon the plenary insurance coverage mandated by the law. As expressed by the author of the legislation, the whole concept of tort liability exemption exists "solely and exclusively for economic considerations." Iavicoli, No Fault and Comparative Negligence in New Jersey, c. 14, "Tort Exemption," (especially 123-124). The treatise of the draftsman of legislation is an extrinsic interpretative aid of considerable weight. Data Access Systems, Inc. v. State, 63 N.J. 158, 166-167 (1973), and cases cited. The construction which the architect of the No Fault law placed upon the tort liability exemption proviso is set forth in the passage from his treatise:
Tort exemption is tantamount to immunity from suit, such as, sovereign immunity, charitable immunity and public employee immunity. Tort exemption is analogous to contributory negligence in that the tort exemption provisions enumerate certain conditions which, if satisfied, insulate the alleged tort-feasor from liability. * * * The issues of fact concerning tort exemption can be resolved by the trier of fact in the same action where such trier of fact must decide other factual issues concerning the accident or injuries in question. [Op. cit at 139]
As the tort liability exemption of the statute is tantamount to the typical common-law and statutory immunities, it is a type of affirmative defense which a defendant is obliged to interpose and consequently has the burden to establish.
*598 This construction of the tort liability exemption was applied in Fennell v. Ferreira, 133 N.J. Super. 63, 68-70 (Law Div. 1975). Judge Dwyer there compared the language used to frame the tort liability exemption with the language found in the death by wrongful act statute, N.J.S.A. 2A:31-1 et seq., and noted that the latter legislation obliges a plaintiff to allege facts which bring himself or herself within the coverage of the act. By comparison, the tort liability exemption did not create a condition that a plaintiff must satisfy to maintain an action; it is a proviso designed for a defendant which he is obliged to interpose. Id. at 68-70.
Similarly, in Falcone v. Branker, 135 N.J. Super. 137 (Law Div. 1975), the court held that defendant's claim of tort exemption is an affirmative defense carrying the concomitant burden of proof, and that the defense may be tested prior to the time of trial by means of a summary judgment motion. The Falcone court ruled that defendants there were entitled to summary judgment because as a matter of law plaintiff had not sustained a "permanent significant disfigurement" under N.J.S.A. 39:6A-8. Id. at 152.
If it is asserted that this interpretation of the tort liability exemption section of the No Fault Law will tend to undercut a legislative intent "to segregate out of our legal system" certain claims arising from auto accidents, Emma v. Romano, 136 N.J. Super. 255, 258 (Law Div. 1975), the answer is two-fold: first, the application of the discovery rule to claims under the No Fault Act would not reduce litigation, but would only protract the time within which suit could be filed; the second response is that the Legislature did not opt for abrogation of the common-law third-party tort remedy. There is a presumption that the Legislature did not take away a common-law right. Boileau v. De Cecco, 125 N.J. Super. 263, 268 (App. Div. 1973), aff'd 65 N.J. 234 (1974). To effectuate such a change the legislative intent must be clearly and plainly expressed. Fivehouse v. Passaic Valley Water Comm'n, 127 N.J. Super. 451, 456 (App. Div. *599 1974); De Fazio v. Haven S. & L. Ass'n, 22 N.J. 511, 518-519 (1956).
The purpose of the tort liability exemption was to counter the increased premium cost for the basic no fault coverage and to yield a reduction in automobile liability insurance premiums. The purpose was described by the author of the legislation and counsel to the legislative Commission in the passage here quoted:
Tort exemption is the necessary burden the public must pay in order to reduce premium costs so that the benefits of a no fault program can be experienced; and the extent of the tort exemption should be no greater than that needed to accomplish that result. Premium cost reduction, not court congestion, justified the need for a tort exemption. Court congestion can and should be reduced by other methods. * * * [Iavicoli op. cit. at 126]
The economic benefits which justify the whole concept of tort liability exemption would be dissipated by an application of the discovery rule to claims arising under the act. Application of the discovery rule, or any modification of that rule, would necessitate insurance carriers setting aside vast open-ended reserves until such times as persons who must maintain coverage, or who have a right to receive benefits, actually accumulated medical expenses in the amount of $200 or more, or as urged in the case at bar, "discovered" the permanent nature of their injuries.
The Legislature could have completely abolished the common-law third-party tort remedy and substituted an administrative reparation procedure to compensate persons suffering injury or damage from auto accidents. Such a "total no-fault" or "pure no-fault" scheme was considered and rejected by the Automobile Insurance Study Commission established by the Legislature to consider alternative solutions. "Reparation Reform for New Jersey Motorists," Report to the Governor and the Legislature, 139, 144 (1971). Alternatively, the Legislature could have simultaneously abolished automobile tort liability and carved out limited situations *600 (such as where death ensued or in which serious and permanent injury, or a specified level of eligible medical expenses incurred by the victim was reached) in which a tortfeasor remained liable for damages. This is the approach adopted by the Commonwealth of Pennsylvania. Pa. Stat. Ann., Title 40, § 1009.301.
The Legislature of New Jersey chose neither to completely abolish common-law tort liability actions nor to combine abolition of the tort remedy with specified exceptions within which liability would be retained. It chose to follow the approach suggested by the Study Commission, which was to retain the common-law tort remedy but to make operational for defendants a limited exemption in cases involving minor soft tissue injuries and relatively nominal medical expenses.[3] See "Reparation Reform for New Jersey Motorists," supra at xiii-xiv. The Study Commission recommended that neither tort exemption nor limited access to general damages should be employed to any appreciable degree, and expressly followed the approach of the State of Delaware which imposes no restriction on the common law right to bring a tort action. "Reparation Reform for New Jersey Motorists," supra at 144. See Del. Code Ann., Title 21, § 2118. In summary, the Legislature in adopting the No Fault Law, did not abrogate the traditional system of tort recovery, but imposed a damage limitation on the right of an auto accident victim to recover for pain and suffering through resort to the common-law tort remedy.
*601 The court concludes that neither the discovery rule nor any modification of that rule should apply to preserve the actionability of the claim here in suit. Defendant's motion for an order of summary judgment is granted.
NOTES
[1] The Supreme Court has recognized the discovery rule in the foreign-object malpractice cases, Fernandi v. Strully, supra, 35 N.J. 434; Fox v. Passaic General Hospital, 71 N.J. 122 (1976); the case of a negligently made land survey, New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968); claim arising from negligently installed telephone conduit, Diamond v. N.J. Bell Telephone Co., 51 N.J. 594 (1968); negligently administered radiation treatment, Lopez v. Swyer, 62 N.J. 267 (1973).
[2] Gloria Picinich and Sylvia Picinich by her guardian ad litem, Gloria Picinich vs. John A. Picinich and Peter J. Rescigno, Superior Court, Law Division, Hudson County, Docket No. L-6698-75. Rescigno filed his answer and crossclaim for contribution on February 19, 1976, but did not make a claim for injuries allegedly sustained by him until March 16, 1977, having moved and obtained an order for filing such affirmative claim out of time.
[3] The Study Commission recommended that the medical expense exemption be $100, which reflected a conception of an extremely narrow level of exemption. The Legislature increased the "threshold" to $200. That is the lowest threshold of any of the 16 no-fault statutes in the country. Also, owners, registrants, operators and occupants of motorcycles, commercial trucks, taxicabs and buses are not under any circumstances exempt from tort liability, nor do out-of-state automobiles qualify for the tort exemption. N.J.S.A. 39:6B-1; Iavicoli, op. cit. at 133.