74 A.3d 968

MORRISTOWN ASSOCIATES, PLAINTIFF–APPELLANT/CROSS–RESPONDENT, v. GRANT OIL COMPANY, ABLE ENERGY, PARSIPPANY FUEL OIL, EDWARD HSI AND AMY HSI AND SPARTAN OIL COMPANY, DEFENDANTS–RESPONDENTS, AND PETRO INC., JOHNSON OIL COMPANY, MEENAN OIL COMPANY D/B/A REGIONAL OIL COMPANY, DEFENDANT–RESPONDENTS/CROSS–APPELLANTS, AND GRANT OIL COMPANY, ABLE ENERGY, INC., PARSIPPANY FUEL OIL CO., AND PETRO INC., DEFENDANTS/THIRD PARTY PLAINTIFFS–RESPONDENTS, v. BYUNG LEE AND MULTI CLEANERS, INC. D/B/A PLAZA CLEANERS, EDWARD HSI AND AMY HSI, JOHNSON OIL COMPANY, MEENAN OIL COMPANY D/B/A REGION OIL AS SUCCESSOR IN INTEREST TO JOHNSON OIL COMPANY AND SPARTAN OIL COMPANY, THIRD-PARTY DEFENDANTS/RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 15, 2013—Decided August 23, 2013.

Before Judges GRAVES, ASHRAFI and GUADAGNO.

*Steven T. Singer* argued the cause for appellant/cross-respondent.

*Richard J. Isolde* argued the cause for respondents/cross-appellants Petro, Inc., Johnson Oil Company and Meenan Oil Co. (*Gaul, Baratta & Rosello, L.L.C.*, attorneys; *Mr. Isolde*, on the brief).

*David W. Field* argued the cause for respondents *Edward Hsi* and *Amy Hsi* (*Lowenstein Sandler, P.C.*, attorneys; *Mr. Field*, on the brief).

*Kristin V. Hayes* argued the cause for respondent Spartan Oil Company (*Wiley Malehorn Sirota & Raynes*, attorneys; *Ms. Hayes*, of counsel and on the brief; *Carolyn Conway Duff*, on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Plaintiff Morristown Associates, the owner of a shopping center, brought claims against several heating oil companies and the prior owners of a dry cleaning business for contribution to plaintiff's environmental remediation costs and for other damages caused by contamination of its property. It now appeals from two orders of the Law Division barring testimony from its liability expert and granting summary judgment or partial summary judgment to several defendants on statute of limitations grounds. The orders are appealable as of right under *Rule* 2:2–3(a) because all remaining claims have been resolved by stipulations of the parties or dismissed by the trial court.

Contrary to plaintiff's arguments, we hold that the general six-year statute of limitations for damage to property, *N.J.S.A.* 2A:14–1, applies to a private claim for contribution pursuant to the New Jersey Spill Compensation and Control Act (Spill Act), *N.J.S.A.* 58:10–23.11 to –23.24. The discovery rule of *Lopez v. Swyer*, 62 *N.J.* 267, 300 *A.*2d 563 (1973), may extend the time limitation based on when "the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Id.* at 272, 300 *A.*2d 563.

In this case, the trial court did not err in concluding that the discovery rule did not warrant permitting plaintiff to pursue claims that arose outside the six-year limitation period. We affirm

the trial court's summary judgment orders. We need not and do not address other issues raised on appeal.

## I.

On July 31, 2006, plaintiff filed a three-count complaint against defendant Grant Oil Company alleging environmental damage to plaintiff's property. In three amended complaints filed over the next several years, plaintiff added as defendants six other heating oil companies that had allegedly delivered oil to the site and also the prior owners of a dry cleaning business that leased space in plaintiff's shopping center. Defendants filed cross-claims against one another and also third-party claims against the current owner of the dry cleaning business.

Plaintiff alleged that the fill pipes to an underground storage tank (UST) located under the leasehold of the dry cleaning business leaked oil into the soil and groundwater from about 1988 to 2003. It alleged that the oil companies and the prior owners of the business failed to inspect the pipes and the UST to ensure they were not leaking and to make repairs. Plaintiff brought claims under the Spill Act (count one), the New Jersey Environmental Rights Act, *N.J.S.A.* 2A:35A–1 to –14 (count two), and common law negligence (count three).

Through a series of motions brought by defendants, the trial court barred proposed testimony by plaintiff's oil delivery expert, Robert Walters, and it also granted summary judgments limiting plaintiff's claims to events of contamination that occurred within six years of the date of its complaint. Subsequently, plaintiff resolved or voluntarily dismissed all such claims that arose during the six-year limitation period and filed this appeal from the trial court's rulings on summary judgment and the expert testimony.

Viewed most favorably to plaintiff, *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), the summary judgment record established the following relevant facts.

In 1979, plaintiff purchased a small shopping center called Morristown Plaza, located on Lafayette Avenue in Morristown. At that time, one of the tenants was a dry cleaning business named Plaza Cleaners, then owned by Robert Herring. Defendants Edward and Amy Hsi became the owners of the dry cleaning business from 1985 to 1998, and third-party defendant Byung Lee became the owner from 1998 to the time of this litigation.

In 1977 or 1978, before plaintiff purchased the property, Herring had installed a UST to hold heating oil for a steam boiler used in the dry cleaning business. The tank was located under a concrete slab floor and was inaccessible. The fill and vent lines for the UST protruded through an exterior wall into an alleyway. Pictures of the outside wall show that extensive staining had occurred where the fill and vent pipes protruded.

Plaintiff asserted it first became aware of the Plaza Cleaners UST in 2003. In August of that year, plaintiff was informed about soil and groundwater contamination by an adjoining property owner that discovered oil in a monitoring well, and Plaza Cleaners was identified as the source. Before then, according to plaintiff, it was unaware that any UST existed at Plaza Cleaners. Defendant heating oil companies allegedly delivered oil to Plaza Cleaners at various times from 1988 until November 2003, after which the current owner converted the system to gas.[1]

According to plaintiff's metallurgical expert, Peter Elliot, the contamination was caused by corroded fill pipes. Elliot stated in a 2007 report that the fill and vent lines should have functioned for more than thirty years, but they "first failed by external corrosion processes after about 10 years (around 1988) due to synergistic effects of soil and aqueous (atmospheric) corrosion that was

---

[1] Two of the oil company defendants allege they in fact never delivered oil to Plaza Cleaners. They have cross-appealed from the trial court's denial of summary judgment on the ground of insufficient evidence of their involvement with contamination at the site.

unique to the installation." When the UST and pipes were removed in 2004, the UST was intact but the pipes had holes as big as two inches in diameter. According to Elliot, the corrosion occurred because of improper design of air conditioning venting directly above the fill pipes, which caused rainwater and moisture, "acidic waters," to accumulate around the pipes and cause extensive corrosion. Experts engaged by defendants agreed with Elliot that the fill pipes were corroded and had holes, causing oil to leak directly into the ground before it reached the UST.

On several occasions between 1999 and 2002, a defendant oil company delivered more than 1000 gallons of oil although the UST had a capacity of only 1000 gallons. Plaintiff's liability expert, Walters, stated in his report that the current owner of the dry cleaning business told one or more defendant oil companies that the tank only had a capacity of 1000 gallons, but the oil companies did not attempt to verify the size of the tank, and their drivers did not inspect the tank or the piping. In his report, Walters estimated that between 9,400 and 14,670 gallons of heating oil were spilled from 1988 to 2003.

Pertinent to application of the *Lopez* discovery rule, several witnesses testified at a hearing before the trial judge about their knowledge of possible oil leaks and the existence of the Plaza Cleaners UST. Frank Cosentino, a former vice president of the management company that operated the shopping center from 1988 to 1995 and again starting in 2002, testified that he never saw anything to indicate there was a UST or any environmental problems at Plaza Cleaners. He did not remember seeing ugly stains on the alleyway wall. He was sure he had seen the pipes coming out of the wall at some point, but he did not remember thinking about where they went or considering that they had any significance. The first time Cosentino became aware of a possible environmental problem was August 28, 2003, when the company next to the cleaners identified some oil in its monitoring well.

Documents revealed that in 1999, a different UST located at a supermarket in plaintiff's shopping center had leaked and required

remediation. Plaintiff's property management company at that time, a different company from Cosentino's, handled the problem and hired a contractor to remove a 1000–gallon UST. Samuel Ekstein, the owner of that management company, testified in deposition that he discussed the 1999 tank removal with a representative of plaintiff, Paul Petigrow. Ekstein also knew there was a tank at Plaza Cleaners.

Cosentino, however, testified that his company had acquired the file of Ekstein's management company for the intervening years of 1995 to 2002, but he did not see anything in the file about a problem with another UST in 1999. Nor did he see anything from the Department of Environmental Protection (DEP) regarding environmental problems at the property.

Petigrow testified he first became aware of the UST at Plaza Cleaners in 2003. Nobody from either property management company mentioned it before that time. During plaintiff's ownership of the shopping center, an environmental audit was completed in 1993 by an engineering company as part of refinancing a mortgage. According to Petigrow, the engineering company found no USTs on the site. Petigrow testified that he had no knowledge of how the tank at Plaza Cleaners was installed on the property. He did not learn in 1999 that there was a UST elsewhere in the shopping center and was not aware that the DEP issued a permit to Ekstein's management company to remove the other UST.

## II.

Defendants filed motions for summary judgment on several grounds, including that the statute of limitations barred any claims brought by plaintiff for damage that had occurred more than six years before the filing of its complaint in July 2006. Plaintiff opposed the motions, arguing among other things, that no statute of limitations applied to its claims for private contribution under the Spill Act, *N.J.S.A.* 58:10–23.11f. The trial court disagreed with plaintiff and ruled that the six-year limitation period of *N.J.S.A.*

2A:14–1 applies to plaintiff's claims. The court also ruled that plaintiff should have discovered its claims no later than 1999, when the other leaking UST was discovered on the property, and that plaintiff did not demonstrate an equitable basis for easing application of the statute of limitations under the *Lopez* discovery rule.

On appeal, plaintiff contends the trial court erred because the Spill Act itself does not contain a statute of limitations and the general six-year limitations period for property damage under *N.J.S.A.* 2A:14–1 does not apply to plaintiff's Spill Act contribution claims.[2] Plaintiff argues that its statutory claim for contribution under *N.J.S.A.* 58:10–23.11f(a)(2) is based on defendants' strict liability for the contamination and that the Legislature meant the contribution statute to be available no matter when the conduct of the responsible parties occurred. More specifically, plaintiff argues that the only defenses available to a private Spill Act claim for contribution are the statutory defenses referenced in *N.J.S.A.* 58:10–23.11g(d) and that a statute of limitations is not one of those defenses.

■ Whether a statute of limitations applies under the Spill Act is a matter of statutory interpretation and therefore a legal question subject to our plenary review. *See McGovern v. Rutgers, the State Univ. of N.J.,* 211 *N.J.* 94, 107–08, 47 *A.*3d 724 (2012); *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995); *see also Estate of Hainthaler v. Zurich Commercial Ins.,* 387 *N.J.Super.* 318, 325, 903 *A.*2d 1103 (App.Div.) (a judge rather than a jury decides whether a particular cause of action is barred by a statute of limitations), *certif. denied,* 188 *N.J.* 577, 911 *A.*2d 69 (2006).

---

2 Plaintiff has not appealed from an October 6, 2009 order dismissing the second count of its complaint, which stated claims under the New Jersey Environmental Rights Act. It has also not argued that the six-year statute of limitations does not apply to its common law negligence claims brought in the third count of its complaint.

The only New Jersey state court decision brought to our attention that addresses the disputed question is an unpublished decision issued by this court in 1999, which held that no statute of limitations applies. Our unpublished opinions, however, do not constitute precedent. *R.* 1:36–3.

In our published decision in *Pitney Bowes v. Baker Industries, Inc.*, 277 *N.J.Super.* 484, 488–89, 649 *A.*2d 1325 (App.Div.1994), we held that *N.J.S.A.* 2A:14–1.1, which is a statute of repose rather than a statute of limitations, did not apply to bar an action for contribution in an environmental contamination case. We stated that the Spill Act "casts a broad net encompassing 'all other dischargers and persons in any way responsible for a discharged hazardous substance. . . .'" *Id.* at 487–88, 649 *A.*2d 1325 (quoting *N.J.S.A.* 58:10–23.11f(a)(2)). We stated that the Spill Act "strictly limits the defenses available to the contribution defendant to those set forth by *N.J.S.A.* 58:10–23.11g(d)," and it includes "no provision of any defense available either to a direct or a contribution defendant based on the passage of time." *Id.* at 488, 649 *A.*2d 1325. We concluded: "It is therefore self-evident that the statutory purpose and policy would be defeated by excluding from contribution liability the primarily responsible party because of the general and prior enacted statute of repose." *Ibid.* Five years later, in the unpublished opinion we have referenced, we applied the reasoning of *Pitney Bowes* with "full force, if not *a fortiori,* to a statute of limitations," that is, to *N.J.S.A.* 2A:14–1.

Federal courts, however, have taken a different approach to the question. In *Reichhold, Inc. v. United States Metals Refining Co.,* 655 *F.Supp.*2d 400, 446–47 (D.N.J.2009), the United States District Court stated:

> The Spill Act does not contain a statute of limitations for private contribution actions. In these circumstances, courts are directed to select a limitations period from among those periods applicable to actions seeking similar relief at common law. *N.J. Stat. Ann.* 2A:14–1 provides a six year statute of limitations for trespass to real property and tortious injury to real property. "This six year statute of limitations is applicable to environmental tort actions at common law, and more specifically to environmental actions based on strict liability." The six year statute of limitations will be applied to [plaintiff]'s claims under the Spill Act.

[Citing *New W. Urban Renewal Co. v. Westinghouse Elec. Corp.*, 909 *F.Supp.* 219, 228 (D.N.J.1995); *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 *F.Supp.* 1354, 1367 (D.N.J.1996); other citations omitted.]

Applying a statute of limitations to Spill Act claims for contribution is consistent with comparable remedies under federal law. A provision of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)[3], 42 *U.S.C.A.* § 9613(g)(2)(B), establishes a six-year limitations period for actions to recover costs expended in a "remedial action" to clean up a hazardous waste site. *See California v. Neville Chem. Co.*, 358 *F.*3d 661, 665–67 (9th Cir.), *cert. denied*, 543 *U.S.* 869, 125 *S.Ct.* 303, 160 *L.Ed.*2d 116 (2004). Another provision of CERCLA establishes a three-year limitations period for a contribution action following a judgment or administrative order fixing a private party's liability. 42 *U.S.C.A.* § 9613(g)(3).

Defendants argue that the federal courts have reached the better decision in interpreting New Jersey's Spill Act to permit a statute of limitations defense. Plaintiff asserts that our own decisions are correct and that applying a statute of limitations to Spill Act contribution claims would be detrimental to the public interest in environmental cleanup and remediation.

We do not view the reasoning of *Pitney Bowes* to be controlling with respect to a statute of limitations. A statute of repose is strictly applied to bar a claim without any regard to when the claimant discovered or could reasonably have discovered the harm. That is, the *Lopez* discovery rule is not available to relax application of a statute of repose. *R.A.C. v. P.J.S., Jr.*, 192 *N.J.* 81, 98, 927 *A.*2d 97 (2007). In contrast, the discovery rule is applicable to a statute of limitations, and it "mitigate[s] the harsh and unjust result that would follow by barring the door of the courthouse to a blameless, injured person who is unaware that he

---

[3] In *N.J. Department of Environmental Protection v. Dimant*, 212 *N.J.* 153, 51 *A.*3d 816 (2012), the Court discussed some of the similarities and differences between CERCLA and the Spill Act.

has suffered an injury." *Ibid.* (citing *Lopez, supra,* 62 *N.J.* at 273–74, 300 *A.*2d 563).

Applying a statute of limitations to a claim for private contribution under the Spill Act does not prevent a diligent plaintiff from recovering the costs of cleanup and remediation from other responsible parties, as plaintiff contends. It merely requires that a claimant file a timely action after it discovered or should have discovered the grounds for its claim. Unlike the statute of repose, the statute of limitations is not "patently repugnant or inconsistent" with the purposes of the Spill Act. *See Pitney Bowes, supra,* 277 *N.J.Super.* at 489, 649 *A.*2d 1325 (quoting *City of Camden v. Byrne,* 82 *N.J.* 133, 154, 411 *A.*2d 462 (1980)).

The time limitations provided in our general statutes of limitations have been applied to a variety of statutory claims that do not themselves contain express periods of limitation. *See Klumpp v. Borough of Avalon,* 202 *N.J.* 390, 409, 997 *A.*2d 967 (2010) (*N.J.S.A.* 2A:14–1 applies to a claim for inverse condemnation alleging violation of the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–1 to –50); *Montells v. Haynes,* 133 *N.J.* 282, 291–95, 627 *A.*2d 654 (1993) (general two-year statute of limitations for personal injury, *N.J.S.A.* 2A:14–2, applies to a claim under the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –49); *Bustamante v. Borough of Paramus,* 413 *N.J.Super.* 276, 298, 994 *A.*2d 573 (App.Div.2010) (*N.J.S.A.* 2A:14–2 applies to a claim under 42 *U.S.C.A.* § 1983 for violation of constitutional rights); *D'Angelo v. Miller Yacht Sales,* 261 *N.J.Super.* 683, 688, 619 *A.*2d 689 (App.Div.1993) (six-year limitation period of *N.J.S.A.* 2A:14–1 applies to a Consumer Fraud Claim pursuant to *N.J.S.A.* 56:8–1 to –60). In *Troise v. Extel Communications, Inc.,* 345 *N.J.Super.* 231, 236, 784 *A.*2d 748 (App.Div.2001) *aff'd o.b.,* 174 *N.J.* 375, 808 *A.*2d 96 (2002), a case brought under the Prevailing Wage Act, *N.J.S.A.* 34:11–56.40, we stated: "When the Legislature creates a statutory cause of action without including a limitations provision, a court will apply the general limitations provision which governs that category of claim."

*N.J.S.A.* 2A:14–1 establishes a six-year limitations period for "*[e]very action* at law for trespass to real property, for any tortious injury to real or personal property ... [and] for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title...." (Emphasis added). When the Legislature amended the Spill Act to provide for a private right of contribution, *see L.* 1991, *c.* 372, § 1, it is presumed to have been aware of the application of the general statute of limitations to causes of action in our courts. Nothing in the Spill Act states that a limitations period shall not apply to such claims.

In *Montells, supra,* 133 *N.J.* at 292–93, 627 *A.*2d 654, the Court stated:

> Statutes of limitations are essentially equitable in nature, promoting the timely and efficient litigation of claims. They "spare courts from litigating stale claims," penalize delay, and provide repose. As the United States Supreme Court has written: "Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost. In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten."
>
> [Quoting *Farrell v. Votator Div.,* 62 *N.J.* 111, 115, 299 *A.*2d 394 (1973); *Wilson v. Garcia,* 471 *U.S.* 261, 271, 105 *S.Ct.* 1938, 1944, 85 *L.Ed.*2d 254, 263 (1985); citations omitted.]

The trial court correctly held that a six-year statute of limitations applies to plaintiff's Spill Act and other claims.

### III.

Plaintiff argues alternatively that it was entitled to the benefit of the discovery rule to permit its causes of action for contribution and negligence. Unlike the purely legal question of whether a statute of limitations applies to Spill Act claims, determining the date on which plaintiff's claims accrued required the trial court to make factual and credibility findings. We defer to those findings as long as they are supported by sufficient credible evidence. *See State v. Locurto,* 157 *N.J.* 463, 474, 724 *A.*2d 234 (1999); *Lamb v. Global Landfill Reclaiming,* 111 *N.J.* 134, 145, 543 *A.*2d 443 (1988); *Vispisiano v. Ashland Chem. Co.,* 107 *N.J.* 416, 432, 527 *A.*2d 66 (1987).

██ The discovery rule provides an equitable basis to "avoid the harsh effects" that may result from "a mechanical application of [the] statute of limitations." *Szczuvelek v. Harborside Healthcare Woods Edge*, 182 *N.J.* 275, 281, 865 *A.*2d 636 (2005). Nevertheless,

> [i]t is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must be considered. The decision requires more than a simple factual determination; it should be made by a judge and by a judge conscious of the equitable nature of the issue before him [or her].
>
> [*Ibid.* (quoting *Lopez, supra,* 62 *N.J.* at 275, 300 *A.*2d 563).]

Plaintiff contends its causes of action accrued no earlier than August 2003 when its property management company, through Cosentino, and its own representative, Petigrow, learned of possible contamination caused by a UST located at Plaza Cleaners. Citing *Amland Properties v. Aluminum Company of America,* 808 *F.Supp.* 1187, 1191 (D.N.J.1992), *aff'd mem.,* 31 *F.*3d 1170 (3d Cir.1994), plaintiff contends that the discovery rule is particularly appropriate for environmental contamination cases because of their scope and complexity. Plaintiff cites federal court decisions for the proposition that a plaintiff's cause of action in an environmental case accrues when it is presented with objective evidence, such as sample results or notice from an environmental authority, of the contamination that is the subject matter of its claim. *See Allied Corp. v. Frola,* 730 *F.Supp.* 626, 629, 632 (D.N.J.1990). In *New West Urban Renewal Co. v. Viacom, Inc.,* 230 *F.Supp.*2d 568, 573 (D.N.J.2002), however, the court stated that tolling under the discovery rule does not depend on whether actual sampling results have been taken, but on whether enough indications of environmental contamination were present to put the plaintiff on reasonable notice of a need to investigate further.

Here, the trial court concluded that plaintiff should reasonably have discovered the contamination at Plaza Cleaners no later than 1999 when a UST had leaked at the supermarket on its property and had to be removed under DEP oversight. Cosentino and Petigrow claimed they did not know about the leaking supermar-

ket UST and its removal. At best, their lack of knowledge suggests a lack of diligence in attending to the property. Ekstein, the property manager for the 1995 to 2002 time period, arranged for removal of the other UST and remediation of the property. He also knew there was an oil tank at Plaza Cleaners.

Plaintiff contends that *Diamond v. New Jersey Bell Telephone Co.*, 51 *N.J.* 594, 242 *A.*2d 622 (1968), is factually on point and supports its discovery rule position. In *Diamond,* the Court applied the discovery rule to a defective condition located underground. *Id.* at 600, 242 *A.*2d 622. The Court stated there was no suggestion that the plaintiffs, in the exercise of ordinary supervision over their property, could or should have discovered their damages. *Id.* at 601, 242 *A.*2d 622.

■ This case is different. When the other UST was removed, plaintiff was put on notice that the 1993 environmental report was inaccurate because that investigation had failed to discover any UST's on the property. Plaintiff should have exercised due diligence and supervision over its property to investigate whether any other UST's existed in addition to the one that was removed. Cosentino admitted seeing the fill and vent pipes that were clearly visible outside the premises of Plaza Cleaners. Oil deliveries to the fill pipes were not done secretly. Cosentino should have made inquiry, even before 1999, about the use of the fill pipes and their condition. Having been put on notice of potential contamination at the property, plaintiff should have investigated whether the Plaza Cleaners' system was functioning properly. Further inquiry should have revealed the overfills of the Plaza Cleaners UST that had occurred since at least 1999, thus providing evidence of a faulty system.

In its ruling on the *Lopez* issue, the trial court stated:

> A landowner has a fundamental duty historically and settled in our law to make reasonable observations of the conditions on its property and to take reasonable care to insure that dangers do not exist on that property.

... Anyone with any degree of reasonable knowledge must have known that there was an oil tank in the vicinity of Plaza Cleaners. There was an exterior fill pipe on the wall which was readily visible. There was a vent pipe in the same vicinity which was reasonably visible.

The trial court estimated that numerous oil deliveries, perhaps hundreds, must have been made to Plaza Cleaners' fill pipe between 1979 and 2003, and it inferred that plaintiff should have become cognizant of them at some point. The court concluded:

Remembering that the discovery rule is equitable in nature, it essentially is intended to relieve the harshness of the rule where the circumstances warrant or a party, through no fault of that party's own, is unable to know, is unable to take reasonable actions promptly to bring appropriate litigation.... Here, the circumstances hardly justify it.

We have no reason on this record to disagree with the trial court's findings and conclusion.

## IV.

Having determined that the trial court correctly limited plaintiff's claims to the six-year period preceding the filing of its complaint, and those claims having been subsequently dismissed, we need not decide any of the other issues plaintiff has raised on appeal or defendants have raised on their cross-appeals.

Affirmed.